## THE STATE v. BERT ANDERSON, Appellant.

### Division Two, November 21, 1905.

1. **ST. LOUIS COURT OF CRIMINAL CORRECTION: Jurisdiction.** The St. Louis Court of Criminal Correction is a court of limited jurisdiction; no jurisdictional intendments or presumptions are to be indulged in its favor, and no matters are to be held within its jurisdiction except such as expressly appear to be so. Under the act creating it, the jurisdiction of said court is limited to misdemeanors committed in the city of St. Louis.

2. **INDICTMENT: Common Law Meaning: Constitutional Provision.** The word "indictment" as used in section 12, article 2 of the Constitution (as amended), which provides that "no person shall be prosecuted criminally for felony or misdemeanor otherwise than by indictment or information," etc., must be understood as having been inserted in the Constitution with the meaning attached to it at common law. And that was an accusation by the oaths of twelve (now at least nine) men of the county wherein the offense was committed.

3. ————: **Information: Subject to Same Rules.** A proceeding by information can not be of broader scope than that by indictment, and since an indictment must be returned by a grand jury of the county in which the offense was committed, so also must an information be lodged in the county of the crime.

4. **OFFENSE COMMITTED ON BOARD VESSEL: Sec. 2413, R. S. 1899, Unconstitutional.** Section 2413, Revised Statutes 1899, providing that "when any offense shall have been committed . . . on board of any vessel or in any railroad car . . . an indictment for the same may be found, and a trial and conviction thereon had, in any county through which or part of which such vessel or railroad car shall be navigated . . . or in the county where such voyage or trip shall terminate, in the same manner and with like effect as in the county where the offense was committed"—is invalid, being in conflict with section 12, article 2, of the Constitution, which, properly interpreted, requires an indictment to be returned, and an information to be filed, in the county where the offense was committed.

Appeal from St. Louis Court of Criminal Correction.—
Hon. Hiram N. Moore, Judge.

REVERSED.

John A. Gernez and Albert C. Davis for appellant.

(1) Section 2413, Revised Statutes 1899, invoked by the State to confer jurisdiction upon the St. Louis

Court of Criminal Correction, is unconstitutional, being repugnant to sections 12 (as amended) and 22, article 2, Constitution of Missouri. State v. Kelm, 79 Mo. 515; Ex parte Slater, 72 Mo. 102; State v. McGraw, 87 Mo. 161; State v. Hatch, 91 Mo. 568; State v. Smiley, 98 Mo. 604; In re McDonald, 19 Mo. App. 370; State v. Dougan, 30 Ark. 41; State v. Dempsey, 94 Ga. 766; People v. Buckrice, 110 Ill. 29; State v. Armstrong, 41 Tenn. 339; State v. Lowe, 21 W. Va. 783; State v. Craig, 50 Tenn. 227. (2) The Court of Criminal Correction does not proceed according to the course of common law, and has no jurisdiction except when expressly given. There is no presumption in favor of the jurisdiction of this court. Ex parte O'Brien, 127 Mo. 477; State ex rel. v. Murphy, 132 Mo. 382.

*Herbert S. Hadley,* Attorney-General, and *Frank Blake,* Assistant Attorney-General, for the State.

The lawmaking power of the State of Missouri has the same right to provide where criminal offenses shall be punished as the Parliament of England had at common law. Similar statutes in other States have been upheld, as has the section in controversy in Missouri. Steerman v. State, 10 Mo. 317; State v. Timmens, 4 Minn. 325; Nash v. State, 2 Iowa (Green) 286; People v. Hulse, 3 Hill (N. Y.) 309; Watt v. People, 126 Ill. 9. It is conceded that if prior decisions of this court, handed down since Steerman's case, are followed, section 2413, as well as other sections of article 10, Revised Statutes 1899, changing the venue in criminal cases, are void. But a history of the common-law system of prosecuting crimes will show that the common-law rule was not in 1607, and is not now, that all crimes are local, and can be prosecuted only in the county where committed. The English rule was and is that crimes are to be prosecuted in the county where Parliament provides they shall be prosecuted. This was the rule in vogue at common law in 1607, and was adopted by Missouri as part

of the common-law system. The old Latin maxim, *"Ratio est anima legis,"* can well be applied to this case, and, if it is applied, Steerman's case will be followed, the constitutionality of section 2413 will be again sustained, the judgment of the lower court will be affirmed, and the appellant will be punished for an offense which he admits he perpetrated.

FOX, J.—This cause is here upon appeal from a judgment of conviction in the St. Louis Court of Criminal Correction. This criminal prosecution is predicated upon an information by the prosecuting attorney of the St. Louis Court of Criminal Correction, duly verified as provided by law and thus charges the offense:

"Chas. P. Williams, prosecuting attorney of the St. Louis Court of Criminal Correction, now here in court, on behalf of the State of Missouri, information makes as follows:

"That on and prior to the 2nd day of October, 1904, the 'Corwin H. Spencer' was a steamboat engaged in navigating that portion of the river Mississippi which lies between the northern and southern boundary lines of the State of Missouri; that on the said last-mentioned day the said steamer was making a voyage or trip along said river wholly between the boundaries aforesaid, and in the course of the said voyage was navigated through a part of the city of St. Louis, State of Missouri; that the said voyage or trip terminated within the city of St. Louis aforesaid; that on the said steamboat, in the course of the said voyage or trip, one Bert Anderson did willfully and unlawfully set up and keep a common gaming house on said steamboat for the purpose of playing a game of chance, commonly called a 'cloth game' (a game played by means of a table covered with a cloth and nine dice), for money and property, contrary to the form of the statutes in such cases made and provided, and against the peace and dignity of the State.

"Second Count.—Chas. P. Williams, prosecuting attorney of the St. Louis Court of Criminal Correction, now here in court, on behalf of the State of Missouri, further information makes as follows:

"That on and prior to the 2nd day of October, 1904, the 'Corwin H. Spencer' was a steamboat engaged in navigating that portion of the river Mississippi which lies between the northern and southern boundary lines of the State of Missouri; that on said last-mentioned day the said steamer was making a voyage or trip along said river wholly between the boundaries aforesaid, and in the course of the said voyage was navigated through a part of the city of St. Louis, State of Missouri; that the said voyage terminated within the city of St. Louis aforesaid; that on the said steamboat, in the course of the said voyage or trip, one Bert Anderson did play with Charles Madsen, T. Bolger, and divers other persons to this affiant unknown, for lawful money of the United States, a certain game of chance played with and by means of a table covered with a cloth and nine dice, which said table and set of dice were used in playing a game of chance, commonly called the 'cloth game,' contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State."

The validity of this information was challenged by motion to quash upon the following grounds:

"That in neither of the counts of this information is it alleged that the offense complained of was committed within the city of St. Louis.

"That in neither of the said counts of said information are facts sufficient recited to show that the St. Louis Court of Criminal Correction has jurisdiction of the offense complained of.

"That neither of the said counts of the information states facts sufficient in law to constitute an offense.

State v. Anderson.

"That both of the counts of the information are vague, indefinite and uncertain, and neither inform the defendant of the offense with which he stands 'charged, nor where said offense was committed.

"That if it is sought to confer jurisdiction upon this court by reason of section 2413, Revised Statutes of Missouri 1899, then neither count pleads facts sufficient to bring the offense within such statute, and, further, such statute is unconstitutional as violative of section 12 (as amended) and 22, article 2, Constitution of this State."

This motion was by the court overruled and the trial proceeded before the court without the intervention of a jury.

It is unnecessary to detail the evidence introduced; it is conceded that the gambling was done, as charged, upon the steamboat Corwin H. Spencer, engaged in the excursion business on the Mississippi river, and the facts establish, beyond dispute, that the gambling on this boat with which defendant is charged in the information, was not within the limits of the city of St. Louis.

The cause being submitted to the court, sitting as a jury, the defendant was found guilty as charged in the second count of the information, and his punishment assessed at a fine of fifty dollars. Motion for new trial was filed and by the court overruled, and judgment rendered against the defendant in accordance with the finding of the court. From this judgment defendant prosecutes this appeal, and the record is now before us for consideration.

OPINION.

It is apparent that the record in this cause presents for our consideration but two propositions:

1. The jurisdiction of the St. Louis Court of Crim-

inal Correction, under the act creating said court, to try the misdemeanor charged in the information.

2.  The validity of section 2413, Revised Statutes 1899.

It is conceded that the misdemeanor for the commission of which it is sought to prosecute the defendant, was committed outside of the city of St. Louis.  With this concession we approach the consideration of the first proposition, as to whether or not the St. Louis Court of Criminal Correction, under the act creating such court, is vested with jurisdiction to try a misdemeanor committed outside of the city of St. Louis.  Section 13 of the act creating this court (vol. 2, R. S. 1899, p. 2544), provides that such court shall have exclusive original jurisdiction of all misdemeanors under the laws of the State committed in St. Louis city.  This court, in Ex parte O'Brien, 127 Mo. l. c. 487, very clearly defined the powers of the court of criminal correction under the provisions of the act creating it.  It was there said:

"The court of criminal correction is a court of record, according to the terms of section 2, page 2152, Revised Statutes 1889.  But, though that section says that court 'shall possess all the powers, and perform the duties, and be subjected to the restrictions of a court of record, according to the laws of this State,' yet, in order to determine what is the scope of its powers and the extent of its jurisdiction, regard must be had to other sections of the law of its organization, among others, to section 13, which confers on such court a similar jurisdiction to that conferred upon justices of the peace.  [1 R. S. 1889, secs. 4055, 4328, 4329, 4359, 4360, etc.]  These statutory citations clearly show that the court of criminal correction is a court of limited powers and statutory origin, and one not proceeding according to the course of the common law.  The rule in this State is well established in relation to such courts, that there are no intendments in favor of their jurisdiction,

and that no matters are to be held within such jurisdiction except they expressly appear to be so. [State v. Metzger, 26 Mo. 65; Rohland v. Railroad, 89 Mo. 180, and other cases.]"

Following the rule as announced in this case, GANTT, J., in State ex rel. v. Murphy, 132 Mo. 382, said: "The St. Louis Court of Criminal Correction is of statutory origin. While for some purposes it is denominated a court of record, it is not one proceeding according to the course of the common law."

It is clear that the power and jurisdiction of this court is limited and no presumptions or intendments are indulged in favor of its jurisdiction. Under the terms of the act creating this court, its jurisdiction is limited to misdemeanors under the laws of the State committed in the city of St. Louis, and under the well-settled rules of law so clearly announced in the O'Brien and Murphy cases, to which reference has been made, even though section 2413 be a valid act, no presumption or intendment can be indulged from the provisions of that act which would confer jurisdiction upon the St. Louis Court of Criminal Correction to try misdemeanors committed outside of the limits of the city of St. Louis.

This leads us to the consideration of the second proposition, which involves the constitutionality of section 2413, supra; this section provides: "When any offense shall have been committed within this State, on board of any vessel or in any railroad car, in the course of any voyage or trip, an examination thereof may be made and an indictment for the same may be found, and a trial and conviction thereon had, in any county through which or part of which such vessel or railroad car shall be navigated or run in the course of the same voyage or trip, or in the county where such voyage or trip shall terminate, in the same manner and with like effect as in the county where the offense was committed."

It will be noted that the offense charged in the information is a misdemeanor, denounced by the laws of this State prohibiting the betting of money or property upon any sort of a gambling device. In order to confer jurisdiction upon the court of criminal correction to try the offense charged, which was concededly committed outside of the city, the provisions of section 2413 are invoked, and the vital question to be answered is, is this act constitutional and valid?

Briefly stated, section 2413 undertakes to authorize not only the return of an indictment for a criminal offense, but as well a trial and conviction thereon, in a county different from the one in which the offense was committed. If this statute is to be held valid, then we confess there must be some change made in the organic law of the State, or the interpretation of its provisions applicable to the subject now being discussed, as announced in the uniform and unbroken line of decisions by this court, must be departed from and no longer recognized as a correct interpretation of such constitutional provisions.

The spirit of our form of government, as is clearly manifested by the terms and expressions of the Constitution and laws of this State, as well as the judicial interpretation of them, is to surround the citizen, when it is sought to deprive him of his life or liberty in a criminal prosecution, with the protection of all legal and proper safeguards, and in the solution of the proposition now confronting us this overshadowing spirit of our form of government should be fully recognized.

Upon the subject of criminal prosecutions and the method of commencing them, section 12, article 2 of the Constitution of this State, as amended in 1900, provides as follows: "No person shall be prosecuted criminally for felony or misdemeanor otherwise than by indictment or information, which shall be concurrent remedies, but this shall not be construed to apply to cases arising in the land or naval forces, or in the militia

when in actual service in time of war or public danger.'' Section 22, article 2, of the Constitution, further provides: ''In criminal prosecutions the accused shall have the right to appear and defend, in person and by counsel; to demand the nature and cause of the accusation; to meet the witnesses against him face to face; to have process to compel the attendance of witnesses in his behalf; and a speedy, public trial by an impartial jury of the county.''

These constitutional provisions have frequently had the attention of this court, and as to their true spirit and meaning we are unable to furnish a better or more appropriate answer than is furnished by the well-considered cases treating the provisions now before us. In discussing these provisions of the Constitution, it was said in Ex parte Slater, 72 Mo. 102, that, ''These constitutional provisions secure to the citizens charged with a felony, first, the right to have the charge preferred by indictment before he can be tried, and second, the right after indictment to a speedy, public trial by an impartial jury of the county. The word 'indictment' as used in section 12, supra, has a well-defined meaning, and must be accepted and understood as having been inserted in the Constitution with the meaning attached to it at common law. It is thus defined: 'An indictment is an accusation at the suit of the king (or State) by the oaths of twelve men (at the least, not more than twenty-three) of the same county wherein the offense was committed, returned to inquire of all offenses in general in the county, determinable by the court in which they are returned, and finding a bill brought before them to be true.' The common law definition has been modified in this State by section 28, article 2, of the Constitution, which declares that hereafter a grand jury shall consist of twelve men, any nine of whom concurring may find an indictment. The above definition of the term indictment is fully warranted by the following authorities: 'Every indictment is to be

found by twelve lawful, liege freemen of the county
where the crime was committed, returned by the proper
officer.' " [Citing 5 Bacon's Abridgment, pages 48
and 52.]

In this same case, in the course of the opinion, the
learned judge quoted approvingly Hawkins' Pleas of
the Crown, and Bishop's Criminal Procedure, where it
is said: "It seems to be generally agreed at this day
that by the common law no grand jury can indict any of-
fense whatsoever which doth not arise within the limits
of the precincts for which they are returned. And upon
this ground it has been resolved to be a fatal exception
to an indictment that it doth not appear by it that the
offense arose within the county or riding or other spe-
cial division or precinct for which the jury that found
it was returned. And, *a fortiori,* therefore, it must
be a good exception that it expressly appears by the in-
dictment that the offense arose in a county different
from that for which the jury was returned." [2 Haw-
kins' Pleas of the Crown, sec. 34, p. 313.] "According
to common-law doctrine all crimes are local. In other
words, the prosecution for them can be carried on only
in the county of their commission. A grand jury can-
not inquire concerning them except within such coun-
ty." [1 Bish. Cr. Proc., sec. 65.]

Proceeding to make a practical application of the
rules announced to the constitutional provisions, it was
thus presented in that case by this court: "Reading
section 12, article 2, of the Constitution, in the light of
the well-understood meaning of the word indictment at
common law as modified by section 28, article 2, of the
Bill of Rights, and it would read thus: 'No person
shall, for a felony, be proceeded against criminally
otherwise than by an indictment, that is, otherwise than
by an accusation at the suit of the State, by the oath
of nine men (at least, and not more than twelve) in
the same county wherein the offense was committed,
returned to inquire of all offenses, in general, in the

county determinable by the court in which they are returned, and finding a bill brought before them to be true.' "

The section of the statute in judgment in the Slater case was section 1804, Revised Statutes 1879, which undertook to authorize the judge of the circuit court, where an impartial grand jury could not be had in the county where the offense was committed, to order an examination of the offense to be had in some county adjacent to the said county where the offense was committed. In accordance with the views as expressed in that case, this court held that section of the statute unconstitutional. The principles announced in that case, in respect to prosecutions by indictment, are equally applicable to the procedure by information. In the application of these principles to an information, it was said by this court in State v. Kelm, 79 Mo. 515: "In Ex parte Slater, 72 Mo. 102, this court held that the word 'indictment,' as used in said section, 'has a well-defined meaning and must be accepted and understood as having been inserted in the Constitution with the meaning attached to it at common law.' The court then quoted from Bacon's Abridgment and other common-law text-writers to show what were the qualities and incidents of an indictment as employed in the ancient proceedings. This being unquestionably a correct construction of the term 'indictment' as used in the Constitution, it must follow that the term 'information,' as employed in the same section, should be subjected to the same common-law meaning."

It is clear that under the constitutional provision a proceeding by information cannot be of any broader scope than that by indictment, and if an indictment must be returned by the grand jury of the county in which the offense was committed, it logically follows that the information must be lodged in the county in which the offense was committed.

The proposition embraced in the provisions of sec-

tion 2413, which authorizes the return of an indictment
for a criminal offense and a trial and conviction upon
it in a county other than the one in which the offense
was committed, is not one of first impression, or by any
means a new question in this court. The principle in-
volved has had the careful consideration of this court
in numerous other cases, upon statutes undertaking to
authorize the commencement of criminal proceedings
for the commission of offenses in counties other than
the one in which the offense was committed, and this
court, following and approving the principles an-
nounced upon this subject in Ex parte Slater, supra,
has uniformly held such statutes invalid on the ground
of being violative of the provisions of the Constitution
of this State. In State v. McGraw, 87 Mo. 161, Ex
parte Slater was approved and followed, and so much
of section 1691, Revised Statutes 1879, as authorized a
person committing burglary in one county to be in-
dicted and tried for that offense in another county, was
declared unconstitutional and invalid.

In State v. Hatch, 91 Mo. 568, it was said, SHER-
WOOD, J., speaking for the court: ''The evidence shows
very clearly and conclusively that the offense was not
committed in the city of St. Louis. This case, there-
fore, falls within the principle announced in Ex parte
Slater, 72 Mo. 102, and in that of State v. McGraw, 87
Mo. 161; that principle being that, under the present
Constitution of this State, it does not lie in the power of
the Legislature to authorize the prosecution of a crime
in a county other than that in which it is committed. In
the case last cited, it was ruled that so much of section
1691 as authorized the crime of burglary to be punish-
ed in any other county than the one in which the offense
was committed, was constitutionally invalid. For like
reasons, it may now be ruled that section 1698, which
authorizes an indictment to be found in either of two or
more counties, where it is a matter of doubt, etc., in

191 Sup—10

which one it was committed, and gives the court of the county where the indictment is found jurisdiction of the offense, is likewise obnoxious to constitutional objections.''

To the same effect is State v. Smiley, 98 Mo. 605, where a section of the statute was held invalid that sought to authorize the return of an indictment for bigamy in a county where the defendant was apprehended, instead of the county where the bigamous marriage took place.

The conclusions of this court upon the constitutional question announced in the cases herein cited, not only find support in the decisions of the appellate courts of Georgia, Tennessee, Illinois, West Virginia and Arkansas, but their correctness is emphasized by the construction of the framers of the Constitution of 1865 and 1875. Section 12, article 11, of the Constitution of 1865, provides that, ''The General Assembly shall provide by law for the indictment and trial of persons charged with the commission of any felony, in any county other than that in which the offense was committed, whenever, owing to prejudice, or any other cause, an impartial grand or petit jury cannot be impaneled in the county in which such offense is committed.'' And as was said by this court in the Slater case: ''The Constitution of 1820 contained no such provision as the above, and the incorporation of it in the Constitution of 1865 is persuasive, if not conclusive evidence, that the framers of that instrument believed that the General Assembly, without such power was expressly conferred upon them, could not exercise it.'' Then followed the Constitution of 1875, the framers of which, doubtless following the spirit of our form of government, looking well to the safeguarding of the rights of the citizen, refused to sanction the provisions of the Constitution of 1865, which authorized the indictment of the citizen in any county other than the one in which the offense was

committed, and this provision was omitted from our present Constitution.

Learned counsel representing the State in this cause has earnestly and very ably presented respondent's side of this case. We have read with a marked degree of interest his presentation of the propositions involved, and, were they original propositions and open questions in this state, the able and exhaustive brief now before us would not only attract our attention, but demand a careful consideration. With commendable frankness it is said by counsel for the State that if the cases herein cited are to be longer followed and approved, section 2413 must fall, for the reason that it is violative of the provisions of the Constitution of this State.

We have indicated our views upon the legal propositions presented by the record, which results in the conclusion that the judgment in this cause should be reversed and the defendant discharged, and it is so ordered.

All concur.