## THE STATE v. ANTON MISPAGEL, Appellant.

**Division Two, December 10, 1907.**

1. **EMBEZZLEMENT: Money: Draft.** A charge of embezzlement or larceny of money is not sustained by proof of the embezzlement or larceny of a bank draft or check.

2. ———: ———: ———: **Variance.** The indictment charged defendant, who was the cashier of a bank in St. Charles, with embezzling four thousand dollars, lawful money of the United States. *Held*, that the charge was not sustained by proof that defendant, at a time when he had no money in the St. Charles bank, issued the draft of said bank for one thousand dollars, drawn on the American Exchange Bank of St. Louis, in the usual form of a bank draft, signed it as cashier, and sent it to an investment company in St. Louis, which collected one thousand dollars thereon, and placed six hundred dollars to the credit of defendant on his individual local account in St. Louis, and four hundred dollars on his individual New York account. The charge that he had embezzled money was not sustained by proof that he had wrongfully issued and appropriated to his own use the draft.

3. ———: **Essence of Offense.** Embezzlement is an offense against property and property rights, and the essence of the offense is the wrongful conversion of property; hence, a reasonably fair description of the property in the indictment or information is an essential averment, and the proof must sustain the averment. [Distinguishing State v. Meysenburg, 171 Mo. 1.]

4. ———: **Jeofails.** The Statute of Jeofails affords no relief in a case where the information charges embezzlement of money and the proof shows the embezzlement of a bank draft or check.

5. ———: **Draft.** A draft drawn by the cashier of a bank upon another bank and sent by him to an investment company for investment and by it collected and the amount deposited to his credit, is not a part of the assets of the bank of which he was cashier, but simply the agency or means employed by him to get possession of money owing his employer, and is of no more significance than any other paper or instrument through which the same evil purpose is accomplished.

6. ———: ———: **Conversion: Venue.** Money collected on a draft, drawn by the cashier of a bank in St. Charles on a bank in St. Louis, by the agent of the cashier to whom it was sent, and there applied to the cashier's personal account, was converted by the cashier in St. Louis through his authorized agent there. 'The cashier had authority to collect in the name of his bank any money to its credit in the St. Louis bank, and until collected the draft was a mere *chose in action*, and being such, the money collected thereon was not converted until collected. Nor does the fact that the cashier was not present in St. Louis when the draft was collected alter the case; nor does the further fact that he formed the purpose in St. Charles to convert the money when he drew and sent the draft. The act of conversion was committed in St. Louis, by defendant, through his authorized agent to whom he sent the draft to be collected.

7. ———: ———: ———: **Of Trust Fund.** Our statute does not make a failure to account for a trust fund or a fund received by an agent or officer, an offense. The essence of the offense of embezzlement is the wrongful conversion of the fund. Failure to account for such fund may constitute very material evidence tending to establish conversion, yet failure to account for it does not constitute the offense of embezzlement.

8. ———: **Venue.** In Missouri there is no special statute fixing jurisdiction in embezzlement cases, and that being the case the jurisdiction exists in the county in which the crime is consummated or completed.

9. ———: ———: **Bank Draft: Conversion of Money.** Defendant, cashier of a bank in St. Charles county, drew a draft upon a bank in St. Louis and sent it to his agent in St. Louis, who collected it, and deposited the amount to the defendant's individual credit, and he was indicted in St. Charles county for embezzling money of the St. Charles bank. · *Held*, that the actual conversion of the money was committed through his agent in St. Louis, and every element of the offense, except the inferentially formed intent to convert the money to be obtained in St. Louis to defendant's use, was present in St. Louis and none of them was present in St. Charles county, and the venue was in St. Louis, and a demurrer to the evidence at the trial in St. Charles county should have been sustained.

Appeal from St. Charles Circuit Court.—*Hon. Jas. D. Barnett,* Judge.

REVERSED AND REMANDED.

*Thos. B. Harvey* and *William L. Mason* for appellant.

(1) The description of the property alleged in the information to have been embezzled must be proved as laid. If the evidence showed that Mispagel embezzled anything, it was a draft, not money, as charged in the information. The variance is fatal. State v. Wissing, 187 Mo. 106; State v. Crosswhite, 130 Mo. 366; State v. Dodson, 72 Mo. 283; State v. Bacon, 170 Mo. 161; State v. Kroeger, 47 Mo. 530; State v. Schilb, 159 Mo. 142; Carr v. State, 104 Ala. 43; Lancaster v. State, 9 Tex. App. 393; Rex v. Kenna, L. R. 1 C. C. 113; Carter v. State, 53 Ga. 326; People v. Leipsic, 62 Pac. 311; Baker v. State, 31 Ohio S. 314; Goodhue v. People, 91 Ill. 37; State v. Hanley, 170 Conn. 265; State v. Burks, 159 Mo. 568; Weiner v. People, 186 Ill. 503; Block v. State, 44 Tex. 620; Hamilton v. State, 60 Ind. 153; Com. v. Weinfield, 45 Mass. 468; Com. v. Wood, 142 Mass. 459; Queen v. Crosby, 1 Cox C. C. 10; Com. v. O'Keefe, 121 Mass. 59; Com. v. Howe, 132 Mass. 258; Bork v. People, 91 N. Y. 5; Bishop on Statutory Crimes, sec. 346; McClain's Cr. Law, sec. 652. (2) The ownership of the property alleged to have been embezzled must be proved as laid. If the American Exchange Bank, against which the draft was drawn, paid any money upon that draft, it paid its own money, not the money of the St. Charles Savings Bank. If a bank or any other person deposits money, checks or drafts in another bank, such money, checks or drafts deposited become the property of the bank in which deposited. The relation of debtor and creditor is established between the depositor and depositary. Therefore, if any money

was converted by Mispagel by means of the draft of-
fered in evidence to prove the charge, it was not the
money of the St. Charles Savings Bank as charged.
Utley v. Hill, 155 Mo. 259; U. S. v. Burton, 196 U. S.
283; Rouguth v. People, 186 Ill. 97; State v. Morgan,
280 Ore. 578; State v. Cooper, 102 Iowa. 146. (3) If
any money was appropriated to Mispagel's use as the
result of the draft offered in evidence, such money was
not under his care or in his possession as charged in
the information, but was in the possession and under
the care of the American Exchange Bank. Therefore,
since the proof must support the allegation of posses-
sion by the accused of the property charged to have
been embezzled, the court should have directed an ac-
quittal. R. S. 1899, sec. 1912; 15 Cyc. Law & Proc., 526.
(4) If, under the evidence, there was any embezzle-
ment of draft or of money, that embezzlement occurred
in St. Louis. If Mispagel sent the draft to St. Louis
and it was there, upon his direction, placed to his credit,
the embezzlement of the draft occurred in St. Louis,
and if any money was paid on said draft it was paid
and converted to his use in St. Louis. The venue,
therefore, should have been laid in St. Louis. State v.
Bacon, 170 Mo. 161; State v. Fraker, 148 Mo. 150; State
v. Gritzner, 134 Mo. 527; State v. Lichliter, 95 Mo. 402;
State v. Shaeffer, 89 Mo. 271; U. S. v. Burton, 196
U. S. 283; Bates v. State, 124 Wis. 612; People v. Gra-
ham, 47 L. R. A. 736.

*Herbert S. Hadley,* Attorney-General, *N. T. Gen-
try,* Assistant Attorney-General, and *Theodore C.
Bruere* for the State.

(1) The venue in this case was properly laid and
proven in St. Charles county. State v. Meysenburg,
171 Mo. 1; State v. Shaeffer, 89 Mo. 271. (2) Appel-
lant contends that the embezzlement occurred in St.
Louis, where the money was received by his brokers,

and not in St. Charles, where he issued the draft, and
sent it by mail to St. Louis, to his broker, and where de-
fendant formed the criminal intent to embezzle the
bank's funds.  As an authority for his position he cites
cases in which the courts have passed on the question
of jurisdiction in cases of receiving money under false
pretenses.  There is a broad distinction in cases of em-
bezzlement and cases of obtaining money under false
pretenses.  In cases of receiving money under false
pretenses, the jurisdiction lies in the forum where
the money was received.  In this case the defendant tes-
tified he sent the money to St. Louis; by so doing he
made the postal service his agent in abstracting the
money; the crime was committed in St. Charles county,
where the draft was drawn and issued, and where the
criminal intent was formed, and where defendant had
to account to his employer.  If this were otherwise,
every defaulting cashier could deposit all the money of
his employer in foreign lands and in foreign banks; ab-
stract it to his heart's content by drawing it out on
drafts drawn on the foreign depository and payable to
himself, or to his agent or confederate; and when asked
for an accounting at the forum of the bank's place of
business, and when he had to account to his employer,
say, "It is true, I ought to have the money misappro-
priated, but I cannot be held to account for the money
here.  I sent your money to a foreign land; it is true, I
never went there myself, but I abstracted your money
by means of a draft, payable to my agent or confederate
in Europe, and where my said agent or confederate
collected it, and you must go to Europe to hold me to
account."  The appellant will find no authority where
this contention is upheld.  Defendant's intent to em-
bezzle was completed in St. Charles county.  2 Bish.
Crim. Law, sec. 314; 1 Ib. sec. 504; 2 Bish. New Crim.
Proc., sec. 326; State v. Hosher, 26 Wash. 643; State v.

Bailey, 50 Oh. St. 644; Kossakowski v. People, 53 N. E. 115; McClain's Crim. Law, 650. The authorities agree that if the transaction constituting the offense extended through different counties that in which the conversion took place has not the exclusive jurisdiction. 1 Bishop on Crim. Proc., 61; 7 Ency. Pl. & Prac., 412; State v. Herger, 106 Iowa 712; State v. Merwell, 113 Iowa 369. But where the transaction extended to different counties, the jurisdiction of the county in which its act of conversion occurred is not exclusive. 7 Ency. Plead. & Prac., 412; State v. Dennis, 80 Mo. 594; State v. Lichliter, 95 Mo. 402; State v. Gritzner, 134 Mo. 512; Works on Jurisdiction, p. 470; 2 Bishop on Crim. Law, pp. 231 and 591; Kossakowski v. People, 53 N. E. 115; State v. Bailey, 50 Ohio St. 644; Cohn v. State, 20 Texas App. 244; Com. v. Parker, 165 Mass. 526; McClain on Crim. Law, 650. (3) Appellant contends that if anybody received any money as a result of the transaction, it was not the money of the St. Charles Savings Bank, and was never in Mispagel's possession or under his care, and for that reason defendant was not guilty of embezzlement. It was the duty of Mispagel to take charge of all the bank's funds. He was the custodian of the bank's funds, and these funds were under his control, and he had to account for them at St. Charles. He embezzled those funds by depositing them with the St. Louis banks, and then fraudulently drew them out and misappropriated them to his own use, and by this means there was a shortage in the cash belonging to the St. Charles bank. To say that the money he thus embezzled was not the money of the St. Charles Savings Bank, but the money of the St. Louis bank, amounts to saying that the defendant, by the means employed, could abstract all the cash of the bank and appropriate the same to his own use, and when confronted with the charge of embezzling all of the cash of the bank, he would reply: "I deposited the money I embezzled in

the St. Louis bank to the St. Charles Savings Bank's credit; and when I embezzled the money, so placed to the bank's credit, I did not embezzle the money of the St. Charles Savings Bank, for it did not belong to the St. Charles Savings Bank, but to the St. Louis bank, and I am no embezzler." The technical cob-web spun by appellant would make every bank cashier embezzler immune from punishment. Defendant appointed his brokers to get the bank's money for him by means of the draft issued, and this was a conversion of the money of the bank to his own use. State v. Woodward, 171 Mo. 593.

FOX, P. J.—Defendant was tried and convicted in the circuit court of St. Charles county, and was by said court sentenced to serve two years in the penitentiary on an information in this language:

"Theodore C. Bruere, Prosecuting Attorney within and for the county of St. Charles, in the State of Missouri, upon his oath, informs the court that Anton F. Mispagel, late of the county of St. Charles aforesaid, on the 28th day of December, 1903, at the county of St. Charles aforesaid, and State aforesaid, being then and there an officer and agent, to-wit, the cashier of and for a certain incorporated company, to-wit, the St. Charles Savings Bank, and the said Anton F. Mispagel being then and there not a person under the age of sixteen years, did then and there by virtue of his said employment as such officer and agent as aforesaid of the said incorporated company, have, receive and take into his possession and under his care certain money to a large amount, to-wit, to the amount of four thousand dollars, lawful money of the United States and of the value of four thousand dollars, of the property and moneys belonging to the said incorporated company, and the said Anton F. Mispagel did afterwards, the said money then and there feloniously embezzle and fraudulently and feloniously convert the same to his own use, with-

out the assent of his employer, the said incorporated company, the owner of the said money; and so the said Anton F. Mispagel did then and there, in manner and form aforesaid, the said money, of the property of the said incorporated company, feloniously steal, take and carry away and converted the same to his own use contrary to the form of the statute in such case made and provided and against the peace and dignity of the State.                              THEODORE C. BRUERE.''

''And Theodore C. Bruere, Prosecuting Attorney, within and for the county of St. Charles, in the State of Missouri, upon his oath, informs the court that Anton F. Mispagel, late of the county of St. Charles aforesaid, and State aforesaid, on the 28th day of December, 1903, at the county of St. Charles aforesaid, being then and there an officer, to-wit, the cashier of and for a certain incorporated company, to-wit, the St. Charles Savings Bank, and the said Anton F. Mispagel being then and there not a person under the age of sixteen years, certain money to the amount and value of four thousand dollars, the same being then and there lawful money of the United States, but the description of which said money is to the Prosecuting Attorney unknown, and which said money was then and there the money and personal property of the said St. Charles Savings Bank, a corporation, as aforesaid, did unlawfully, fraudulently and feloniously embezzle and convert to his own use, without the assent of the said incorporated company, his employer, which said money had then and there come into the possession and under the care of him, the said Anton F. Mispagel, by virtue of his said employment as such officer, as aforesaid, of said incorporated company, contrary to the form of the statute in such case made and provided and against the peace and dignity of the State.    THEODORE C. BRUERE,

''Prosecuting Attorney.''

It appears that there were eleven other similar informations pending in that court against the defendant, and those with this one charged embezzlements in the aggregate sum of $77,752.37. There were also two indictments in the city of St. Louis, charging in each the embezzlement of $1,000. It also appears that the bank had demanded of defendant and his bondsmen the payment of an alleged shortage of $90,326.15, and later in three separate suits had sued defendant and his bondsmen for the aggregate sum of $106,769.52. The information hereinabove set out is known as Information No. 10. To this information, defendant interposed the following motion:

"Comes now the defendant, by his attorneys, and moves the court to quash the information filed herein, because—

"1.    The facts alleged therein constitute no offense.

"2.    The allegations are duplicitous in alleging in the first count that the defendant was both an officer and an agent of the incorporated company, and in the second count that he was simply an officer of said incorporated company.

"3.    Said information fails to identify the incorporated company by an allegation of the State or country by virtue of which it was incorporated, or by alleging the place of business of said incorporated company.

"4.    Because at the time of filing the information and long time prior thereto and at the time of the alleged embezzlement, Theo. C. Bruere, the prosecuting attorney, was an officer, to-wit, a member of the board of directors of the St. Charles Savings Bank, and interested in the funds and properties thereof."

On this motion it was admitted that the prosecuting attorney filing the information was a director and stockholder in the St. Charles Savings Bank during the

years 1903, 1904, and 1905. The court overruled the motion and this is assigned as error.

Thereupon, the defendant filed a motion to require the State to elect upon what transaction it would stand, in which motion is set out all the facts above stated as to the number of informations, the amount of the total alleged embezzlements, the amount of the claim or demand of shortage as made by the bank against defendant and his bondsmen, the amount sued for in the three several suits, and also further alleging that the demands aforesaid were in writing and covered a period of fourteen years, including numerous transactions, and items, and that no such sum as $4,000 appeared in said items. On this motion were offered in evidence the informations and indictments aforesaid, the itemized demand aforesaid, and the petitions in the three several suits. This motion was overruled, and the action of the court thereon assigned as error in the motion for a new trial.

To prove the alleged embezzlement of $4,000 named in the information, the State introduced drafts as follows: Draft for $500 drawn October 26, 1903, in favor of Edwards & Sons, a brokerage firm in St. Louis, on the American Exchange Bank; draft for $800 drawn September 9, 1903, in favor of Edwards & Sons, on the American Exchange Bank; draft for $1,000 drawn February 12th, 1903, in favor of Edwards & Sons, on the Mechanics' National Bank; draft for $200 drawn June 3, 1903, in favor of Edwards & Sons, on the Mechanics' National Bank; draft for $1,000 drawn November 20, 1902, in favor of the Orthwein Investment Company, a brokerage concern doing business in St. Louis, on the American Exchange Bank; draft for $500 drawn July 1, 1902, in favor of the Orthwein Investment Company, on the Mechanics' National Bank.

These were described by the prosecuting attorney in his opening statement to the jury, and it was further

stated that he expected to show the embezzlement of the $4,000, by these said six drafts. When the first described draft was first offered in evidence the defendant again renewed his motion to require the State to elect upon what transaction it would proceed. This was overruled and defendant excepted. Upon the close of the evidence offered by the State, the defendant demurred in this language:

"Comes the defendant at the conclusion of the evidence on behalf of the plaintiff, and demurs to the same as insufficient to sustain the allegations of the information, and moves the court to instruct the jury to acquit, on the ground and for the reasons, as follows:

"1. The allegation is the embezzlement of money and the evidence tends to show the embezzlement, if any, of drafts or commercial paper.

"2. The allegation is embezzlement in the county of St. Charles, and the evidence shows that any conversion of drafts or money that did occur, occurred in the city of St. Louis.

"3. The money alleged to have been converted to his own use by the defendant, was in the city of St. Louis and not in the county of St. Charles.

"4. The money alleged to have been converted by defendant was not in his possession at all.

"5. The proof fails to show that defendant had in his possession any money whatsoever, at the times of drawing the drafts or at any other time, or that there was any money in his custody in the bank of which he was cashier or belonging to said bank.

"6. The evidence is insufficient to show a prima-facie case, and there is a fatal variance between the allegations of the information and the proof offered in support thereof.

"7. The evidence fails to show that such moneys as the St. Charles Savings Bank had in the St. Louis banks were not placed there and to the credit of the St.

Charles Bank, by the defendant in sufficient amount to meet the drafts offered in evidence.

"8. The evidence fails to show the cash on hand in the St. Charles Savings Bank at the time of the drawing of the alleged drafts, or that the money to meet said drafts was not placed in said bank by defendant, and fails to show that the defendant did not give value for said drafts when drawn.

"9. The evidence fails to show the status of the account between the St. Charles Savings Bank and this defendant as its cashier at the times of drawing said drafts, and that at said times he as such cashier did not have a credit to his balance to justify him in drawing said drafts and converting them to his own use."

This demurrer was overruled and exceptions saved. The six drafts and other evidence having been introduced, the defendant thereupon moved the court to require the State to elect upon which of the said six transactions it would stand, which motion the court sustained, and the State elected to stand on the draft of November 20, 1902, numbered 97,985, drawn in favor of the Orthwein Investment Company for $1,000, and drawn on the American Exchange Bank of St. Louis, which draft was in the usual form of a bank draft and signed, "A. F. Mispagel, Cashier." This election necessarily shortens a statement to be made from an exceedingly voluminous record. This draft was in defendant's handwriting and signed by him. He sent it to the Orthwein Investment Company at St. Louis, which Company collected $1,000 thereon and placed $600 to the credit of defendant on his individual local account in St. Louis, and $400 to the credit of defendant on his individual New York account. Defendant was speculating in stocks and grain through this and other brokerage companies. The evidence shows that while this draft on its face was drawn in favor of the Orthwein Investment Company, the defendant, on the

stub kept in the draft book of the bank in St. Charles, had entered said draft as payable to one Dan Stevens. Stevens was the holder of a time deposit certificate given by the St. Charles Savings Bank, and on the day this draft was issued, defendant had an entry made on the books to the effect that $1,000 had been paid Stevens on his time certificate. No such payment had been made at that time as testified to by Stevens and in effect admitted by defendant. Stevens testified that he sent no money to the Orthwein Investment Company. By the payment of this draft the credit balance of the St. Charles Savings Bank with the American Exchange Bank was reduced by the amount of the draft. Defendant, on the day he issued said draft, gave the American Exchange Bank credit for the $1,000 on the books of the St. Charles Savings Bank, thus reducing the balance due from the American Exchange Bank to the St. Charles Savings Bank by the sum of one thousand dollars.

By a mass of testimony defendant undertook to explain away the alleged shortage to the bank. He also undertook to explain away the single transaction finally involved in this case by reason of the election by the State. He claimed to have placed money in the vault of the bank sufficient to cover the transaction, although his personal account with the bank, as shown by the books, did not show it. Several errors as to the giving and refusal of instructions are urged; but with the views we entertain of the law of the case it is not essential that such instructions should be here reproduced. The trial court's attention was directed to them in the motion for new trial and they are fully preserved in the record.

This is a sufficient statement to indicate what this case is and the nature and character of the testimony upon which it was submitted to the jury. At the close of the evidence the court instructed the jury in accord-

ance with its views applicable to the testimony developed at the trial and the cause was then submitted to the jury upon the evidence adduced and the instructions of the court, and as before stated they returned a verdict finding the defendant guilty and assessing his punishment at imprisonment in the penitentiary for two years. Timely motions for new trial and in arrest of judgment were filed and by the court overruled. Sentence was pronounced and judgment entered in conformity to the verdict and from this judgment the defendant prosecuted this appeal and the record is now before us for consideration.

## OPINION.

The record before us presents a number of very important legal propositions. Some of them are exceedingly close and are entitled to be classed among the many complicated legal propositions with which courts are frequently confronted. We take it that it is not out of place to say, at the very inception of the consideration of this cause, that counsel representing the State, as well as those representing the appellant, have materially aided us in our efforts in seeking a correct solution of the questions presented to our consideration by a clear and able presentation of them in their respective briefs.

### I.

It is contended by learned counsel for appellant that the evidence fails to establish the material allegations in the information. In other words, it is insisted that the charge in the information of embezzlement of money is not sustained by the proof, which shows that he converted to his own use in St. Charles county a draft. Upon this proposition we take it that the rule is well settled that in an information for embezzlement, like an information for larceny, the property embezzled

must be described and the proof must be in substantial accord with such description. Embezzlement is an offense against property and property rights, and the correct value and description in charging such offense are essential and material averments. In treating this subject, McLain, in his work on Criminal Law, vol. 1, sec. 652, thus states the rule: ''As a general proposition the money or property should be described with the same certainty as in an indictment for larceny, and if there has been a change in form of the property between the time of receipt and time of embezzlement, it should be described as of the form at the time of embezzlement.''

After a careful consideration of the adjudicated cases in which this question was in judgment before the appellate courts, as well as the text-writers treating of this subject, we are lead to the conclusion that a charge of embezzlement or larceny of money is not sustained by proof of the embezzlement or larceny of a draft or check. Mr. Bishop, in his work on Statutory Crimes (3 Ed.), sec. 346, states the rules of law applicable to this subject in the following language: ''The word 'money' means, in these statutes, only what is legal tender. It was even adjudged in Texas to extend simply to metallic coin, and not to include our national greenbacks. Therefore, it does not comprehend bank-bills, though they pass current, or United States treasury warrants, or county claims, or orders of a railroad company on its treasurer, or mere promissory notes, or bills of exchange, or bank checks, or ordinarily anything which is a mere representation of money.''

In Carr v. State, 104 Ala. 1, c. 56, which was a case of embezzlement, the court, in discussing the propositions now before us, said: ''Each count of the complaint charges the defendant with having received, in one form or another, money from Mrs. Rice. On one aspect of the evidence, he received only a check from

her directly or indirectly. Obviously a check is not money, and obviously also unless he did receive money of hers, the court should have acquitted him. Charge 20 asked by the defendants asserts this, and should have been given." Charge 20, referred to in the Alabama case just cited, which the court said should have been given, told the jury that "a check is not money, and if you believe from the evidence that the defendant received from Mrs. Rice no money, then you must find him not guilty." A similar ruling was made by the appellate court of Texas. In Lancaster v. State, 9 Tex. App. 393, the defendant Lancaster was charged with the larceny of one hundred and forty-two dollars, current money of the United States. The proof adduced upon that charge was that he received from the prosecuting witness checks on a bank, drawn by the prosecuting witness and payable to defendant, aggregating $138, and $3 in cash. The court, in discussing the legal propositions disclosed upon that state of facts, said: "We are of opinion that proof of having obtained checks or orders on a bank for money will not support an allegation charging the theft of lawful money of the United States. There was proof of the receipt of three dollars in money, it is true, but this proof alone would not support a conviction for felony."

So in the case of Commonwealth v. Wood, 142 Mass. 459. The indictment in that case charged that by false pretenses the prosecuting witness was induced to part with and deliver to the defendant $556.50 in money. It was expressly held that the charge was not sustained by proof of the delivery of a check or draft. The same court, in Commonwealth v. Howe, 132 Mass. l. c. 258, in discussing the proposition now under consideration, said: "The third count charges that the defendant obtained by false pretenses the sum of one thousand dollars from one Bailey; and the proof was, that Bailey paid and delivered to the defendant 'the

sum of seven hundred and sixty dollars, and that in the form of a certificate of deposit of a bank in Philadelphia.' It is objected that this was a variance; and this objection must prevail. We must assume that defendant obtained from Bailey a certificate of deposit of a bank in Philadelphia, for the sum named. The variation in amount is immaterial; but an averment of obtaining a sum of money by false pretenses is not supported by proof of obtaining a certificate of deposit of a bank."

In Goodhue v. People, 94 Ill. l. c. 47, the indictment charged the embezzlement of money, and the proof adduced upon the trial established the embezzlement of county warrants or orders. It was held by the Supreme Court of that State that the charge was not sustained by such proof.

The doctrine announced in the authorities heretofore cited finds full support in numerous other cases. [People v. Leipsic (Cal.), 62 Pac. 311; Block v. State, 44 Texas 620; Hamilton v. State, 60 Ind. 193; Com. v. Merrifield, 45 Mass. 468.]

This precise question has never been passed upon by the Supreme Court of this State. In State v. Dodson, 72 Mo. 283, where the charge was the embezzlement of three horses, it was held improper to admit evidence showing the embezzlement of the proceeds of such horses. In State v. Crosswhite, 130 Mo. l. c. 366, the charge was the embezzlement of potatoes. It was held that evidence of the embezzlement of the proceeds and an instruction thereon were improper. In State v. Schilb, 159 Mo. l. c. 142, the charge was embezzling money. It was held that such charge was not sustained by proof of the embezzlement of a cow and calf. Now, while it must be frankly conceded that these cases are not applicable to the proposition now under discussion and are of little value in the solution of the propositions now being considered, however, they are import-

ant as showing the tendency of this court to sustain the general doctrine that in cases of embezzlement and offenses against property there must be a reasonably fair description of the property and that upon the trial the proof must conform to such description.

In the case of State v. Wissing, 187 Mo. l. c. 106, it was urged by the appellant that an instruction was erroneous because it assumed that the charge of embezzlement of money was satisfied by the proof of embezzlement of checks. Judge BURGESS, who wrote the opinion in that case, did not discuss the proposition for the reason, doubtless, that there was no necessity for such a discussion. He clearly pointed out that the evidence in that case sustained the charge of the embezzlement of money by abundant proof which established beyond question that money in fact had been embezzled; therefore, it was simply held that there was no error in the instruction, because the proof shows that in fact money had been embezzled.

Applying the rules of law as heretofore indicated in the authorities cited, we are of the opinion, even conceding that the draft, as identified in this case, was one which could be made the subject of embezzlement, still the proof of the conversion of such draft does not sustain the charge in the information that the defendant converted to his own use one thousand dollars in money, of the property of the bank of which he was cashier. In other words, where an indictment or information charges the embezzlement or stealing of money, it is not sustained by proof of embezzlement or stealing of a check, draft, bond or other property. The proof must be in substantial accord with the charge in the information.

The conclusion reached upon this proposition is in no way in conflict with the doctrine announced in State v. Meysenburg, 171 Mo. 1. The offense in that case was statutory bribery, and the essence of the offense was

the corrupt agreement, not the character of the property which passed by reason of the corrupt agreement. In the case at bar the very essence of the offense is the conversion of property, hence a reasonably fair description of the property is an essential averment in the indictment or information, and the proof must sustain the averment, and the Statute of Jeofails can in no way relieve the necessity of such essential requirement.

Aside from all this, the draft as designated and identified by the proof in this case did not in fact constitute any part of the assets of the St. Charles Savings Bank. It was entirely unlike drafts, checks and bonds which are frequently deposited in banks and become a part of their assets. Under the facts of this case it was not entitled, in the ordinary sense and understanding in commercial usage, to be classified as a piece of commercial paper constituting a part of the assets of the bank. As applied to this case it was simply the agency and means employed by the defendant to get possession of money which was owing his employer, and was of no more significance than any other instrument in the form of a receipt or in any other form by which the same evil purpose could have been accomplished.

Under the facts in this case it is clear that the St. Charles Savings Bank had no specific money in the American Exchange Bank, but it was simply a creditor of the American Exchange Bank, and had a *chose in action* as against such bank. In other words, the simple relation of creditor and debtor existed, and if the defendant, instead of using this so-called draft, had used an ordinary receipt and either presented it in person or through his agent, and by this means obtained the thousand dollars, the offense would have been the same. It is clear that the defendant, as cashier of the St. Charles Savings Bank, had authority to collect indebtedness due such bank and when this one thous-

and dollars was paid to his authorized agent in the city
of St. Louis, or if paid to the defendant himself in the
city of St. Louis, such money, when so paid, was the
property of the St. Charles Savings Bank. Under the
facts of this case such property was received by defend-
ant through his agent in the city of St. Louis, and it
appearing from the evidence adduced that defendant's
agent made application of such money under the direc-
tions of the defendant, to the satisfaction of his (defend-
ant's) individual account, it must be held that the con-
version of this money occurred in the city of St. Louis
through the authorized agent of the defendant.

In State v. Bacon, 170 Mo. 161, the defendant was
entrusted with a pension check for $36 in Douglas
county, which he was authorized to take from that
county to Norwood in Wright county and cash and re-
turn with the money to Cheney, the owner of the check,
in Douglas county. An information was filed against
the defendant in Douglas county charging him with em-
bezzlement of the check and upon that charge he was
tried and acquitted in the circuit court of Douglas
county. He had collected the amount of money due up-
on the check in Wright county and converted the same
to his own use, and an information was filed against
him in Wright county charging him with the embezzle-
ment of the money so converted. To the information
filed in Wright county the defendant filed a plea of
*autrefois acquit,* in which he alleged that he had been
tried and acquitted of the same offense in Douglas
county. It was held in that case, Judge BURGESS speak-
ing for the court, that the defendant was properly con-
victed of the crime in Wright county and properly ac-
quitted of the charge in Douglas county. In that case,
in view of the embezzlement of the money in Wright
county, collected upon the pension check which was
entrusted to the defendant in Douglas county, it would
not be a violent indulgence of inference, in view of his

subsequent acts, that when he was entrusted with the check in Douglas county he then and there formed the intent of collecting the money in Wright county and embezzling it. However, as before stated, Judge Bur-gess held, and correctly so, that the conviction was proper in Wright county where the conversion actually took place.

In the case at bar it makes no difference, so far as the commission of the offense of embezzlement is concerned, that the defendant was not present in person in the city of St. Louis. As cashier he had the authority to collect the *chose in action* held by the St. Charles Savings Bank against the American Exchange Bank, and whether the money was collected by his agent in the city of St. Louis and there applied to the defendant's personal account, thereby converting the money to defendant's use under the defendant's directions, or whether he had gone in person and collected such money in the said city of St. Louis and converted the same to his own use, in the same manner as was done by his agent, by applying it to the satisfaction of his own individual account, the offense would have been the same, and the conversion of the money would have occurred in the city of St. Louis.

In State v. Bailey, 50 Ohio St. 1. c. 647, the court, in discussing the proposition now under consideration, said: "That the presence of the offender within the county, where a crime is committed, is not always necessary to give jurisdiction, is a settled principle," citing, in support of the doctrine, Norris v. State, 25 Ohio St. 217. The Norris case, cited above, was one involving the obtaining of property under false pretenses. The defendant in that case resided in Springfield, Clark county, Ohio. The company with which the defendant did business was resident in Akron, Summit county, the same State. The false pretenses by which the de-

fendant obtained the property were embraced in a letter written by the defendant at Springfield to the company at Akron, and in the letter he directed them to ship the goods by freight. In compliance with the request of the defendant contained in such letter the company delivered the goods to the railroad company, and upon such state of facts the court held that such railroad company was the agent of the defendant to receive the goods, and that the crime was completed and committed in Summit county and not in Clark county, where the defendant resided, and this doctrine was announced notwithstanding the fact that defendant had not been in Summit county. This case of Norris v. State has been expressly approved by this court in two cases, State v. Shaeffer, 89 Mo. 271, and State v. Lichliter, 95 Mo. l. c. 408.

Mr. Works, in his treatise on Courts and Their Jurisdiction, page 470, thus states the proposition: "Nor is it necessary that the party committing the offense should, at the time of the commission of it, be actually within the State. For example, a party in one State may, through innocent agents, commit an offense against the laws of another State, and within its borders, and thus render himself amenable to prosecution in the latter State."

## II.

Having reached the conclusion as heretofore indicated, that the actual conversion of the money charged in the information as shown by the evidence in this case, occurred in the city of St. Louis, and that such act of conversion was done in said city by and through the defendant's authorized agent, we are next confronted with the exceedingly interesting as well as important proposition in this case as to where the venue of the commission of the offense by the defendant should be laid. The record sharply presents the question as to

whether the embezzlement of the money as charged in the information should have been charged to have occurred in the city of St. Louis or in St. Charles county. Defendant's place of employment was in St. Charles county and it must be conceded that it can be reasonably inferred that the criminal intent was formed in St. Charles county, but the criminal act of conversion was in the city of St. Louis. Ordinarily the venue would be in the city of St. Louis. To illustrate: If I form an intent while in Cole county to steal a horse, which I know I can find in Callaway county, and pursuant to that intent cross the river, and actually steal the horse, the crime is complete in Callaway county, and that is the only jurisdiction for prosecution, unless I take the stolen animal to some other county, where, by force of our statute, I may be prosecuted elsewhere.

The learned Attorney-General representing the State insists that in the case at bar there are two jurisdictions and the State may elect, as it has in this case. It is manifest that the defendant, Mispagel, did not convert any money of the St. Charles Savings Bank which he had in his possession in St. Charles county. Directing our attention to the proposition urged by the State that in this case there was jurisdiction either in the county of St. Charles or in the city of St. Louis, we will say at the very inception of the consideration of that question that the evidence shows the existence of the relation of bank and cashier, and the by-laws, which were introduced in evidence, gave the cashier of this bank, who was the defendant, the right to exercise certain powers and imposed upon him certain duties which are ordinarily performed by cashiers of banks, without specifically mentioning what the powers or duties are. The defendant had to account for the moneys and other property received by him belonging to the bank, and presumably at the place of business of said bank, and it is urged by the State that, having formed

the intent in St. Charles county, and having to account for the money to his employers in said county, this conferred jurisdiction upon the circuit court of St. Charles county, notwithstanding the fact that the actual money was both received and converted in the city of St. Louis, and we frankly confess that this contention is not wholly without some weight. It must, however, be observed that our statute does not make a failure to account for a trust fund, or a fund received by an agent or officer, an offense, but the essence of the offense is the wrongful conversion of the fund, and while failure to account for such fund may constitute very material evidence tending to establish the act of conversion, yet the failure to account by no means constitutes the offense of embezzlement of the fund.

In Works on Courts and Their Jurisdiction, page 471, it is announced that the general rule is that where no statute on the subject prevails, the jurisdiction exists where the crime is consummated or completed. In this State we have no special statute fixing jurisdiction in embezzlement cases. "At common law an indictment can be found in that county only in which the crime has been committed." [12 Cyc. 229.] In the same volume and on the same page of the Cyclopedia above cited, the American rule as applicable to this subject is thus stated: "In the United States most of the State constitutions and declarations of rights expressly provide in substance that all criminal prosecutions shall be brought to trial in the county in which the crime shall have been committed. These provisions are strictly construed in favor of the accused, and with a recognition of the principles of the common law, and the Legislature cannot authorize a trial in any other county."

This court has announced in no uncertain or doubtful terms the rule that the Legislature cannot under our statute arbitrarily place the jurisdiction of a crim-

inal cause in a county other than the county in which
the offense was committed, and it has been expressly
ruled by this court that where the lawmaking power
undertakes to indicate and enforce such laws it is the
province of the court to declare them unconstitutional
and void. [State v. Smiley, 98 Mo. 1. c. 607-608, and
cases cited; State v. Hatch, 91 Mo. 568; State v. Ander-
son, 191 Mo. 134.]

The case of State v. Hatch, above cited, furnishes
express authority upon the proposition now before us.
The charge involved in that case was one of embezzle-
ment and the provisions of section 1698, Revised Stat-
utes 1879, were invoked in aid of the proposition that
the jurisdiction of said cause was in the circuit court
of the city of St. Louis. This section provided:
"Where there is a matter of doubt, in the opinion of the
court, in which of two or more counties the offense was
committed, the court of either in which the indictment
was found shall have jurisdiction of the offense." It
was held in that case that there was no jurisdiction in
the city of St. Louis and section 1698, Revised Stat-
utes 1879, was declared void. It was urged in that
case by the distinguished counsel, Attorney-General
Boone, representing the State, citing many of the Eng-
lish cases which are embraced in cases now cited by
the State in the case at bar, that the embezzlement was
in fact committed in St. Louis, and the jurisdiction was
there irrespective of this statute. The opinion in the
Hatch case does not fully state the facts, at least it is
not very explicit upon the facts; so, making an inde-
pendent examination, we have examined the original
record with a view of ascertaining the facts in judg-
ment in that case. We find them about as follows:
Hatch was the general collecting agent for J. E. Hay-
ner & Company of St. Louis, which firm was selling
mowers and reapers throughout the State. He resided
at Sedalia. By his contract he was to receive a salary

and expenses. He was to report collections and make settlements in St. Louis; when he collected he should remit at once and his salary and expenses were to be paid or remitted to him. He collected the sum of six thousand dollars or more belonging to his firm in Pettis and other western counties in Missouri. After so doing he was in St. Louis, drew a hundred dollars of two hundred and eighty dollars then due on salary and expenses, over the protests of his employer, assuring them that he had made no collections not reported. As a fact he had prior to this denial collected over six thousand dollars and had appropriated it at different times in Sedalia and other places to his own use in grain speculations. The indictment was in several different counts covering each collection and also in one omnibus count charging the entire sum. There was no question under the evidence but what the defendant had to account for his collections in St. Louis either by remittance and report, or in person. This was his contract and the foregoing as recited were substantially the facts of that case. SHERWOOD, J., speaking for the entire court, said: "The evidence shows very clearly and conclusively that the offense was not committed in the city of St. Louis."

In State v. Fraker, 148 Mo. l. c. 160, this court, in discussing the correct rule as applicable to the question now under consideration, said: "When, as here, a crime consisting of a series of acts, part done in one county and part done in another, it is dispunishable at common law in either, unless enough be done in one county to amount to a completed and punishable criminal act," citing 1 Bishop's New Cr. Proc., sections 54, 55 and cases cited, "and this rule holds in the absence of statutory enactment to the contrary."

Applying the rules as announced in the case last cited we are lead to inquire what element of the offense in the case at bar is wanting in order to constitute

a complete offense in the city of St. Louis.  The relationship of the parties, that of banker and cashier, existed in the city of St. Louis as well as in St. Charles county.  The receipt of the money, as well as the conversion of it, was in the city of St. Louis, and not in St. Charles county.  The conversion itself furnishes the most satisfactory evidence of the intent to convert and consummate the crime, and there is an entire absence of any fact tending to show that the employer consented to the conversion of this money which was received and converted in the city of St. Louis; hence, we have every element of this statutory crime present in the act committed by the defendant in the city of St. Louis.

In Michigan there is practically the same constitutional guarantee that we have in this State as to the place of trial of an individual charged with the commission of a criminal offense.  In that State the lawmaking power enacted a statute which authorized a prosecution for embezzlement in certain cases in the county where the complainant's principal place of business was located.  A man by the name of Hill was arrested on complaint of one Taylor on a warrant issued for embezzlement.  Following this, Hill instituted his suit against Taylor for false imprisonment, and in the case of Hill v. Taylor, 50 Mich. 549, Judge CAMPBELL, in discussing the law applicable to the subject now in hand, said: "Hill prosecuted Taylor for false imprisonment in being concerned in an unlawful arrest, and obtained a judgment against him for damages, which is brought up on writ of error.  The proceeding under which he claims to have been arrested was on a complaint made before a justice of the peace in Washtenaw, for an alleged embezzlement in Wayne county.  This action was based on section 7605 of the Compiled Laws which authorizes embezzlement by various public agents, or by private agents under instructions or

agreements as to the disposal of property, to be prose-cuted in the county where the complainant's principal place of business may be. Although there are some cases where by the rules of law that might be deemed the *locus delicti,* it cannot be seriously claimed that the prosecution can be had in a county where the crime was not actually or in contemplation of law perpetrated. The constitutional guaranty upon this subject is too plain to be controverted. [Swart v. Kimball, 43 Mich. 443.] And the warrant in this case was on its face in-valid as issued for an offense beyond the jurisdiction of the justice who issued it."

In the case of Swart v. Kimball, cited by Judge CAMPBELL in the foregoing quotation, the opinion was written by Judge COOLEY, in which he held a statute possessing some of the features of the one treated of by Judge CAMPBELL to be void as being violative of the Constitution.

Judge BLACK, in State v. Smiley, 98 Mo. 1. c. 607, in discussing this question, thus stated the rule applica-ble to it. He said: "Now under the Constitution of 1875, the indictment for a felony must be found by a grand jury of the county where the offense was com-mitted. It was so ruled, after mature deliberation, in Ex parte Slater, 72 Mo. 102, and that case has been followed in subsequent cases. [State v. McGraw, 87 Mo. 161, and State v. Briscoe, 80 Mo. 644.] It follows that the clause of section 1536, R. S. 1879, just quoted, is void, because in conflict with the Constitution of 1875, and it matters not that it might have been upheld under the Constitution of 1865. The indictment is worthless, for the Madison Circuit Court had no juris-diction of the offense."

We find in volume 7 Ency. Plead. & Prac., p. 412, the general rule is stated thus: "The defendant cannot be prosecuted for embezzlement in a county where the crime was not actually or in contemplation of law per-

petrated.  Where the entire transaction constituting the embezzlement occurred in one county only, the venue, as a matter of course, should be laid in that county.''

Our attention is directed by the Attorney-General to Bishop's New Criminal Procedure, vol. 1, sec. 61, in which the author in the text says:  ''Embezzlement may, in various circumstances, be deemed committed in any one of several counties, at the election of the prosecuting power.''  Upon an examination of Mr. Bishop upon that subject it will be noted that in the foot note the authorities were cited, upon which doubtless the learned author based the rule as heretofore announced.  We find that the cases noted are English cases and some cases from the State of Texas.  The Texas cases are not in point and furnish no authority for the application of the rule in the administration of the laws in this State, for the reason that in Texas there is a statute in reference to embezzlement similar to our statute respecting the asportation of stolen property, which is that the offense of larceny may be charged in any county where the stolen property may be taken. Our attention is also directed to cases from Iowa, Washington, Texas, Massachusetts, Ohio and Illinois. It is sufficient to say as to the authorities that Iowa, Massachusetts and Washington have statutes more or less like the Texas statute as above referred to.  In the Illinois case of Kossakowski v. People, 53 N. E. 115, the conclusion was announced before the question now under consideration was reached, hence there was no decision of that question.  The Ohio case, 50 Ohio St. 644, seems to be in point and no statute is discussed.

We have indicated our views upon the propositions disclosed by the record before us.  We frankly confess that the question is a very important one and by no means one in which the reason and logic are all on one side; but we have carefully analyzed the authorities

upon the propositions presented and have indicated the result of our review of such authorities. With all of the elements of the offense present in the city of St. Louis and none of them present in St. Charles county, except the inferentially formed intent to convert the money to be obtained in St. Louis, we feel constrained to hold that the crime charged in this information, as shown by the proof disclosed in the record, was committed in the city of St. Louis and not in St. Charles county.

Entertaining the views to which we have herein given expression, it results in the conclusion that the defendant's demurrer to the testimony should have been sustained. This conclusion having been reached renders unnecessary the discussion of other questions presented to our consideration by learned counsel for appellant.

The judgment in this cause is reversed and the cause remanded to the end that the trial court may dispose of it in accordance with the views herein expressed.

All concur.