[Crim. No. 2865. In Bank.—June 30, 1926.]

THE PEOPLE, Respondent, v. WILLIAM C. BORCHERS, Appellant.

**[1]** CRIMINAL LAW—EMBEZZLEMENT—EVIDENCE.—In order to sustain a conviction upon a charge of embezzlement it must at least be shown, first, that the accused was the agent or bailee of the prosecuting witness in holding the alleged embezzled property; second, the property must actually belong to the alleged principal, the prosecuting witness; third, it must be lawfully in the possession of the accused at the time of the alleged embezzlement; fourth, the accused must have been guilty of the conversion which the statute denounces; and fifth, there must be shown an intent on the part of the accused to deprive the prosecuting witness of his property unlawfully.

**[2]** ID.—EMBEZZLEMENT OF CHECK—EVIDENCE.—Embezzlement of a check drawn in favor of a payee with a firm name and indorsed

1.  See 10 Cal. Jur. 238.
2.  See 10 Cal. Jur. 262; 9 R. C. L. 1297.

by such name and marked "paid" is not proven as against a defendant, whose surname is a part of said firm name, where the check is delivered by the maker into the hands of said defendant with the intention upon the part of said maker that it should be cashed by the payee named therein, and there is no evidence that said defendant did not deliver the check to the payee named in it; and assuming that said defendant is the payee of the check and that he obtained and converted the proceeds arising from it, he could be convicted, if at all, under a charge of embezzlement, only for the appropriation of the cash and not at all for the conversion of the check.

[3] ID.—COMMERCIAL PAPER—EMBEZZLEMENT OF CASH.—Where property, including commercial paper, is entrusted to one with authority to transmute it into property of another kind, including cash, to the use of the one who deposits with the trusted person, the property so entrusted cannot be the subject of embezzlement, if the transmutation is made, but only the property which results from the change. Under such circumstances the holder of the original deposit, having made the transmutation, has done, up to the time of the change in the nature of the property, exactly what he was authorized to do.

[4] ID.—CHECKS—EVIDENCE.—In this prosecution for embezzlement of certain checks drawn in favor of a payee with a firm name, the evidence was insufficient to sustain a conviction of the defendant, to whom the checks were delivered, where said checks were indorsed by such firm name and marked "paid" and, according to the theory of the prosecution, were cashed, even though the proceeds therefrom were not used for the purposes for which the checks were given, nor the money returned to the makers of the checks.

[5] ID.—PROMISSORY NOTES—EVIDENCE.—In a prosecution for embezzlement of a promissory note in a specified amount and made payable to the order of defendant's wife, defendant's conviction may properly be upheld, where, notwithstanding that said note, at the time it was delivered to defendant, was blank, except that it was signed by the complaining witness, it was given for a certain purpose (for which, however, it was not used) and the defendant was impliedly authorized to fill the same for such purpose, and the jury could infer that it was defendant who filled in the blank spaces.

(1) 20 C. J., p. 410, n. 6, p. 415, n. 49, 50, p. 420, n. 85, p. 425, n. 14, p. 433, n. 63.    (2) 20 C. J., p. 431, n. 42.    (3) 20 C. J., p. 431, n. 42, 45, 46 New.    (4) 20 C. J., p. 486, n. 60.    (5) 20 C. J., p. 486, n. 60.

3.  See 9 R. C. L. 1268.
5.  See 10 Cal. Jur. 243.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. Edwin F. Hahn, Judge. Affirmed in part; reversed in part.

The facts are stated in the opinion of the court.

Henry St. Rayner, Ford, Bodkin, Watt & Herlihy, R. P. Henshall and Nat Schmulowitz for Appellant.

U. S. Webb, Attorney-General, and H. H. Linney and Wm. F. Cleary, Deputies Attorney-General, for Respondent.

LAWLOR, J.—The defendant, William C. Borchers, was indicted by the grand jury of the county of Los Angeles in ten counts—five for the crimes of larceny and five for embezzlement. As to the five larceny counts and one of the counts of embezzlement the prosecution was abandoned, but defendant was found guilty of embezzlement on each of the four remaining counts—numbered one, three, five, and nine. A motion for a new trial was interposed and denied, whereupon judgment of conviction was pronounced on each of the said four counts. The district court of appeal reversed the judgment and order so far as they related to counts one, five, and nine, but affirmed them so far as they concerned count three. We are in accord with the reasoning and conclusions of the district court of appeal touching counts one, five, and nine, and though we agree with the conclusion of that court as to count three, we cannot accept the reasons advanced therefor. As regards counts one, five, and nine, therefore, the opinion of the district court of appeal contains an expression of our views of the questions considered therein, and that portion of said opinion to which we now adhere, hereby adopt and make a part hereof is as follows:

"It is contended that the evidence was insufficient to sustain the verdict on the first count. This count charged appellant with the embezzlement of a check or order for $2000, drawn by one Sarah M. Garrigus in favor of Borchers, Clarke & Co., the indictment alleging that appellant at the time was the agent and bailee of Mrs. Garrigus. The evidence in support of this branch of the indictment, found in the testimony of the complaining witness, was to the effect

that Mrs. Garrigus was desirous of obtaining a loan for [of] $250,000; that appellant told her that he was connected with the Southern California Mortgage Company, which would let her have the money, but he later told her that one of the directors of the company objected to the making of the loan and stood in the way of the completion of the deal; that appellant then urged the complaining witness to buy the stock of this director in the mortgage company in order to be rid of him and therefore rid of his objection to the loan, saying that $2000 would be necessary for the purpose. Appellant urged this course upon Mrs. Garrigus on three different occasions and she finally consented to the plan, especially as appellant said to her that he would later sell the stock and give back her money. She then handed appellant her check on a bank for $2000, payable to Borchers, Clarke & Co., Inc. This paper was offered in evidence at the trial, together with an indorsement thereon, 'Pay to the order of [another bank than the one on which the check was drawn].' Below this indorsement appeared the signature 'Borchers, Clarke & Co., Inc.' The check also showed by means of a perforation stamp, 'Paid 9–20–23,' which date was the next day after the date of the paper. At the time of the delivery of the check to appellant Mrs. Garrigus signed a document headed '200 Units Subscription to Underwriters Syndicate,' and which she testified she read before executing. This instrument recited in part that the signer subscribed for ten units of the common capital stock of 'the Pre-organization Syndicate now being organized to underwrite' shares of the common stock of the Southern California Mortgage Company, a corporation proposed later to be incorporated under the laws of Delaware; that the signer was to pay $2000 for the ten units upon signing the document; that the signer's subscription and similar subscriptions 'shall be used for pre-organization purposes, and the expense of starting the company, and advertising campaign, and for selling expense of said stock to be issued under the direction of the underwriters, Borchers, Clarke & Company'; that each of the units subscribed for should be exchangeable for common stock 'to be issued out of that promotion stock later to be issued to Borchers, Clarke & Company, underwriters for service performed and to be performed in organizing and procuring capital for said company'; that the 'certificates of stock hereby subscribed for to be issued in my

name or to my order . . . and to be delivered to me when authorized by the Commissioner of Corporations and in full compliance with all the terms and conditions of the permit later to be issued by the Commissioner'; that the subscription was 'taken and executed' upon the condition that the company was to be organized within ninety days 'or moneys collected to be refunded to the subscriber'; and that this 'subscription unit transferable only upon acceptance and approval of Borchers, Clarke & Company.' To this agreement was appended the following, signed 'Borchers, Clarke & Company, By Wm. C. Borchers': 'Receipt of the sum of $2000.00 is hereby acknowledged and the above Pre-organization subscription is hereby accepted, in connection with the terms and conditions above mentioned.' Mrs. Garrigus testified that she received no stock in exchange for the check, and that neither the check nor the $2000 which it represented was ever returned to her. The only evidence of an appropriation of the check for $2000, or of the amount represented thereby, was in the endorsement shown upon the paper, that is to say, the special indorsement signed 'Borchers, Clarke & Co., Inc.,' and the perforated indorsement, 'Paid,' with a date.

[1] "For the purpose of testing the sufficiency of this evidence to support a conviction on the first count it is necessary to state several principles of the law of embezzlement. In order to sustain a conviction upon such a charge it must at least be shown, first, that the accused was the agent or bailee of the prosecuting witness in holding the alleged embezzled property; second, the property must actually belong to the alleged principal, the prosecuting witness; third, it must be lawfully in the possession of the accused at the time of the alleged embezzlement; fourth, the accused must have been guilty of the conversion which the statute denounces; and fifth, there must be shown an intent on the part of the accused to deprive the prosecuting witness of his property unlawfully. (See 20 C. J. 413 and following pages.)

"Before attempting to make application of these rules of law it is to be observed that in one respect the evidence under the first count of the indictment is to be viewed in two distinct aspects. Mrs. Garrigus testified that her check was given for the purchase of the stock in the mortgage

company said by appellant to be held by the director who opposed the making of the loan to her. On the other hand, the documentary evidence shows that the check was given in payment for certain 'pre-syndicate' shares of stock which were to be exchanged for shares later to come from the then unincorporated mortgage company. Appellant insists that the recitals of the documentary evidence are conclusive upon the prosecution and that the case attempted to be made against him under the first count of the indictment is to be plumbed from that viewpoint. This particular question, however, we do not find it necessary to decide, as in our opinion the result is the same whether the evidence be seen in the one aspect or in the other.

[2] "It appears to us that the evidence for the prosecution under the first count failed to establish several elements necessary to a conviction of appellant of the crime with which he stands charged. Various considerations seem to exhibit the justice of this remark. The check, under any view of the evidence, was delivered into the hands of appellant with the intention upon the part of Mrs. Garrigus that it should be cashed and that its proceeds should be used to pay for shares of stock. Even if it be said that the check might have been passed by endorsement in payment for the stock, the payee certainly was clothed with the power to cash it, and even with the right to do so, for the purpose of making payment. Moreover, it was intended by Mrs. Garrigus that the paper should be cashed by Borchers, Clarke & Co. and not by appellant. That is conclusively shown by the manner in which it was drawn. Appellant could not have gotten the money on it, at least not until after it had gone through the hands of Borchers, Clarke & Co. Therefore, in strictness, as it appears to us, it may possibly be said that the check was not delivered to appellant to be held, even momentarily, for Mrs. Garrigus, but to be held for Borchers, Clarke & Co., that is, that within the meaning of the law of embezzlement appellant may not have been her agent or bailee, but the agent of the payee of the check. Here it is to be observed that the indictment does not charge and there is nothing in the evidence to show that appellant, in dealing with Mrs. Garrigus, was masquerading under the name of a corporation—if that is what the concern named was—the title of which entity contained a word which was the same as his own surname. Under all the circumstances

of the case, then, appellant was burdened by Mrs. Garrigus with the duty of delivering the check to Borchers, Clarke & Co. We need not pause to inquire what the charge against appellant must have been if he had failed to comply with this duty and had converted the check to his own use— whether he should then have been indicted for the embezzlement of paper which was the property of Mrs. Garrigus or with property which belonged to the corporation, assuming from now forward that it was one. There was no evidence that appellant did not deliver the check to the payee named in it. In fact, the endorsement of the corporate name upon the paper indicated that the delivery was made and that appellant properly discharged his duty so far as the check was concerned. Let us now turn to other considerations. We have already seen not only that Mrs. Garrigus intended that appellant should deliver the check to Borchers, Clarke & Co., but that the corporation was to transmute it into cash. Suppose we assume, in order to show how far short of sufficiency the evidence fell, that the corporation was not in the transaction, or that Borchers, Clarke & Co. was another name for appellant. In other words, let us assume that the check was drawn payable to appellant and that it bore his endorsement and the perforated mark 'Paid.' These assumptions are distinctly favorable to respondent, but even with them we are to observe that the charge here was the embezzlement of the check and not the embezzlement of cash, the converse of the case of *People* v. *Riccardi,* 50 Cal. App. 427 [195 Pac. 448], upon which respondent relies. There is a vast difference between the two charges, as the following authorities will demonstrate: *Commonwealth* v. *Merrifield,* 4 Met. (Mass.) 468; *State* v. *Bacon,* 170 Mo. 161 [70 S. W. 473]; *State* v. *Mispagel,* 207 Mo. 571 [106 S. W. 513]; *People* v. *Leipsic,* 6 Cal. Unrep. 536 [62 Pac. 311]; *People* v. *Meseros,* 16 Cal. App. 277 [116 Pac. 679]. **[3]** These cases establish the rule that where property, including commercial paper, is entrusted to one with authority to transmute it into property of another kind, including cash, to the use of the one who deposits with the trusted person, the property so entrusted cannot be the subject of embezzlement, if the transmutation is made, but only the property which results from the change. Under such circumstances the holder of the original deposit, having made the transmutation, has done,

up to the time of the change in the nature of the property, exactly what he was authorized to do. In *People* v. *Riccardi, supra,* the facts were the same in substance as those in the present instance, under the assumptions now made, but the defendant there was charged with the embezzlement of cash and not of the check which he turned into cash. There was no evidence here that appellant embezzled the check, still disregarding the interposition of Borchers, Clarke & Co. in the affair. The prosecution proceeded upon the theory that the paper was cashed, exactly as Mrs. Garrigus intended that it should be and as the prosecuting witness in *People* v. *Riccardi, supra,* intended that the check there in question should be. Assuming then, as we have already done, that appellant was the payee of the check and that he obtained and converted the proceeds arising from it, he could have been convicted, if at all under a charge of embezzlement, only for the appropriation of the cash and not at all for the conversion of the check.

''Upon these reflections it appears to us, as already stated, that the evidence failed to disclose several of the elements which we have above set forth as necessary to a conviction upon a charge of embezzlement. In the first place, it was not shown that appellant converted the check, the only property to which the charge against him related, and it follows also from this failure of proof that there was no showing of an intent on the part of appellant to deprive Mrs. Garrigus of the check unlawfully. It may be doubtful also— but we express no opinion on what immediately follows— whether appellant was, under the law of embezzlement, the agent or bailee of Mrs. Garrigus in receiving the check and in holding it on its way to Borchers, Clarke & Co., or whether, as between the prosecuting witness and appellant, the check belonged to her, within the meaning of that law, while he held it. It seems to us, then, that the evidence did not sustain the conviction on the first count. . . .

[4] ''Appellant contends that the evidence was insufficient to sustain the verdict under the fifth count of the indictment. In that count he was charged, while acting as the agent and bailee of Mrs. Garrigus, with the embezzlement of a certain check or order for $800 signed by her and payable to the order of Borchers, Clarke & Co., Inc. This was the evidence produced in support of the charge: Mrs.

Garrigus testified that she gave the check for $800 to appellant for the purpose of paying for the engraving and printing of bonds which were intended to be issued as evidence of the indebtedness to the Southern California Mortgage Company, supposed to arise from the loan of $250,000 referred to in the evidence above set forth as relating to the first count of the indictment. After the date line and the name of the bank upon which it was drawn, the check read thus: 'Pay to the order of Borchers, Clarke & Co., Inc., eight hundred and no/100 dollars. $800.00. For printing bonds.' It was signed by Mrs. Garrigus and at the time it was offered in evidence it bore the following endorsements: 'Pay to the order of [a bank other than the one upon which the check was drawn], Borchers' Clarke & Co. Paid 11–26–23.' There was evidence to the effect that no bonds were ever printed as contemplated, and that no part of the proceeds of the check was ever paid out for such a purpose. Neither the check nor any part of the proceeds thereof was ever returned to Mrs. Garrigus. This evidence appears to place the conviction under the fifth count in the same difficulty with that under the first count. Not only did the endorsements on the check tend to show that it had been cashed, but it is the theory of the prosecution that it was cashed. It is said in respondent's brief, concerning the particular check now in question: 'It was shown that the check was deposited in a bank and paid by it.' It is also said that no more than this, and other evidence referred to in the brief, 'was necessary to bring home to defendant the receipt of the *money,*' italics being ours. Returning now to the endorsements on the check, it is to be observed that they tend to prove that the paper was cashed by Borchers, Clarke & Co. and not by appellant. Under all these circumstances what we have said in disposing of the conviction under the first count of the indictment applies with equal force to the conviction under the fifth. The latter conviction, therefore, cannot stand.

"It is also contended by appellant that the evidence fails to sustain the conviction under the ninth count of the indictment. This count departs from the affairs of Mrs. Garrigus and charges that appellant embezzled property of one H. E. Ketchum, which property appellant at the time held as the agent or bailee of the person named. The property

in question was alleged to be a check or order for $515, payable to the order of Borchers & Clarke. The evidence under this branch of the indictment was that the check was issued for the purpose of paying for the printing of certain bonds. It was not used, nor was the cash which it represented, for that purpose. Neither the check nor the proceeds arising from it was ever returned to Ketchum. The paper read, so far as it is material here: 'Pay to the order of Borchers & Clark $515.00. Five hundred and fifteen & no/100 Dollars. H. E. Ketchum.' When it was offered in evidence it bore the perforated marks, 'Paid 11–26–23' and was endorsed, 'Pay to the order of [a certain bank]. Borchers, Clark & Co.' Not only were these marks and endorsements on the check, but it is the theory of the prosecution that it was cashed, as it is said concerning the paper in respondent's brief: 'The check was introduced in evidence and it showed that it had been paid by the bank on which it was drawn.' Our attention is called to no evidence that the *check* was converted by appellant. It was testified by Ketchum: 'Q. . . . Did you intend that your individual check should be delivered to the person who printed the bonds, or that it should be delivered to the company, and that the company should pay for the bonds itself? . . . A. I intended the check to be delivered to the company. . . . Q. To which company? A. To Borchers & Clarke. . . .' These facts seem to make applicable what we have said above concerning the convictions under the first and fifth counts. The conviction under the ninth count therefore must also fall.

"Appellant contends that parts of the trial judge's charge to the jury were erroneous on the ground that they amounted to instructions upon matters of fact. It is also claimed that certain of the court's instructions in effect told the jury that its members might disregard other instructions which the court gave as to the law. These contentions are to our minds so clearly untenable that we forbear further to mention them.

"Still other points are made, but they are either disposed of by what has been said concerning the particular questions which we have thoroughly discussed, or they relate to appellant's conviction under counts of the indictment as to which a reversal will be ordered for the reasons above given."

[5] It is likewise contended by the appellant that the evidence addressed to the third count of the indictment is insufficient as matter of law to sustain the verdict thereon. In this count the appellant was charged with the embezzlement of a note entrusted to him as the agent of Mrs. Garrigus and payable to the order of Myra J. Borchers in the sum of $4,000. Concisely stated the evidence touching the third count tended to show that the appellant represented to the prosecuting witness that two directors, other than the one mentioned in connection with count one of the indictment, were opposed to the loan of $250,000 which she was seeking from the Southern California Mortgage Corporation and that to overcome this opposition it would be necessary to "buy them off" by purchasing their stock; that he represented that $4,000 would be required to secure that result; that he requested the prosecuting witness to "put up a note," but stated that it would not be used or hypothecated in any manner; that when Mrs. Garrigus signed the "note" and delivered it to appellant there was nothing on the face thereof except certain printed matter; that the amount of the note, the date thereof, the time the note was to run, the name of the payee and the amount of the interest did not appear thereon when she signed as maker and delivered it to appellant; that appellant stated he would fill in the blank spaces in the instrument; that she did not expressly authorize the appellant or any other person to fill in any of the blank spaces; that she authorized the appellant to use the instrument in connection with the transaction for which it was given to him, and that she did not learn of the insertions in the instrument "until the bank showed it to me."

Appellant contends that the evidence addressed to count three is insufficient to support a conviction thereon for the reason that when the prosecuting witness parted with the instrument to him it was a mere scrap of paper and not a note. As the indictment charged appellant with the embezzlement of a $4,000 promissory note payable to Myra J. Borchers, it is urged by appellant that the instrument when delivered to him did not answer that description and therefore the conviction under count three was improper.

We are of the opinion that the conviction under this count of the indictment may be affirmed without determining

whether the doctrine of estoppel, applied by the district court of appeal, is applicable so as to preclude the appellant from contending that the instrument when delivered to him was not a note. As outlined above, the evidence touching the third count of the indictment tended to show that the appellant was the agent of Mrs. Garrigus for the purpose of consummating the transaction described; that the unfilled form of note was delivered to and received by him in that capacity; that he, at the time of receiving it, informed her, without objection on her part, that he would fill in the blank spaces; that he was impliedly, if not expressly, authorized by her to make these insertions in the instrument in order to complete that part of said transaction in the course of which such note completely filled out to some payee and in the amount of $4,000 was to be used. If the appellant had so filled out and so used said note the conclusion is inescapable that it would have been a perfectly valid instrument. Nor do we think the fact that appellant filled out the note in the name of his wife would have affected its validity if he had otherwise acted in good faith in its transfer. From the fact that he had the foregoing authority and from the further fact that he apparently had continuous possession of the instrument from the time he received it until he transferred it in finished form, the jury might reasonably infer that it was he who filled in the blank spaces so as to render it a good note before uttering it. With the aid of this inference we have the appellant filling in this instrument as he was, at least impliedly, authorized so to do and having done so, converting it to his own use as charged in the third count of the indictment. The offense charged in said count of the indictment was thus completely proven without the aid of the doctrine of estoppel which is so exhaustively discussed by counsel for both sides. The appellant did not take the stand as a witness in his own behalf. Had he done so and attempted to deny the agency relationship or, admitting such relationship, had he testified that he had not made the insertions in the instrument, the troublesome question as to the applicability of the doctrine of estoppel might have arisen. In our view, however, that question does not arise on the face of the record in this case and hence it becomes unnecessary to decide it.

The judgment and order, in so far as they relate to the first, fifth, and ninth counts of the indictment, are reversed. The judgment and order under the third count are affirmed.

Shenk, J., Richards, J., Seawell, J., Curtis, J., and Waste, C. J., concurred.

Rehearing denied.