[Crim. No. 140.   Fourth Appellate District.—March 29, 1932.]

THE  PEOPLE,  Respondent,  v.  T.  S.  MURAKAMI, Appellant.

Lindsay & Gearhart for Appellant.

U. S. Webb, Attorney-General, and John D. Richer, Deputy Attorney-General, for Respondent.

BARNARD, P. J.—The defendant was charged with the crime of grand theft in an information, the charging part of which read as follows: "The District Attorney of the County of Fresno hereby accuses T. S. Murakami of a felony to-wit: Grand theft in that on or about the 15th day of May, 1930, in the County of Fresno, State of California, he unlawfully took the property of the Fresno Mutual Savings Association, a voluntary association, consisting of the sum of $300.25, in lawful money of the United States."

This appeal is from a judgment which followed his conviction by a jury, and from an order denying a motion for a new trial. It appears from the evidence that the Fresno Mutual Savings Association was an organization or association, not incorporated, organized for the purpose of using certain funds paid in by its members to make loans to members and to others, for the joint benefit and profit of all of the members. The offense for which the appellant was tried and convicted consisted of taking and converting to his own use a sum of money which had been collected by him as treasurer of this organization, from one of the members of the society to whom a loan had previously been made. Other material facts will appear in this opinion.

A number of the points raised by the appellant, namely: That his demurrer to the information should have been sustained, that the information does not charge a public offense, that the appellant was charged with one crime in the in-

formation and tried upon the theory that he had committed a separate and distinct offense, and that there was a fatal variance between the information and the proof, may be all treated together. The essence of these contentions is that the information attempts to charge a crime under section 484 of the Penal Code, while the case was tried upon the theory that a crime had been committed under section 504 thereof. It is argued that the appellant may not lawfully be convicted under section 484 for the reason that he cannot be guilty of larceny unless he takes the personal property of another, and that since it was not proved that this association or society was organized under the laws of the state of California, it follows that there was no other person or legal entity whose property could be taken. ▪ It is also urged that the appellant could not be convicted of the crime referred to in section 504 since the society or organization here in question was a partnership of which the appellant was a member, and that he could not be convicted of embezzlement from himself. This last contention, we think, is sufficiently answered by the case of *People* v. *Mahlman,* 82 Cal. 585 [23 Pac. 145]. Appellant concedes the force of this if, as he states, the information had been drawn under the provisions of section 504, but insists that it has no bearing for the reason that the information was drawn under the provisions of section 484. ▪ The former crimes of larceny, embezzlement and obtaining money under false pretenses are merged by section 484 of the Penal Code into the one crime of theft. (*People* v. *Stevenson,* 103 Cal. App. 82 [284 Pac. 487].) Section 484 includes not only the crime of stealing the "personal property of another" but also the crime of fraudulently appropriating "property which has been intrusted" to a defendant. Section 504 of this code more particularly covers one form of this last offense and makes it embezzlement for an officer of any association or society to fraudulently appropriate to his own use any property which he has in his possession by virtue of his trust. Under section 490a of this code, the word "embezzlement" in this section is to be read as if the word "theft" were substituted therefor. The appellant maintains that under the theory upon which this case was tried, the information itself should have been drawn with particular reference to section 504 of the Penal Code. It was drawn under sec-

tion 484 of this code and, as above pointed out, this includes the offense which is more particularly described in section 504. In *People* v. *Fewkes,* 214 Cal. 142 [4 Pac. (2d) 538], the court said:

"The information charged the offense as 'Grand Theft, a felony, committed as follows' (reciting the particulars), under the authority of sections 484, 490a and 952 of the Penal Code as amended and added in 1927 (Stats. 1927, pp. 1043, 1046, 1047). This was sufficient. (See *People* v. *Myers,* 206 Cal. 480 [275 Pac. 219]; *People* v. *Plum,* 88 Cal. App. 575 [263 Pac. 862, 265 Pac. 322]; *People* v. *Giron,* 94 Cal. App. 53 [270 Pac. 462].) It is not necessary that the information state the kind of grand theft with which the defendant is charged in order to comply with subdivision 2 of section 950 of the Penal Code. (*People* v. *Manchell,* 91 Cal. App. 788 [267 Pac. 718].)

"Under the new procedure it is obviously unnecessary and improper to compel the district attorney in advance of the proof, to elect upon what theory the prosecution is to proceed, whether larceny, false pretense, trick and device, embezzlement, etc. These distinctions in the charge and proof obtained under the old practice, but are done away with in the new. They were eliminated, not only for the purpose of simplifying procedure, but also to relieve the courts of the necessity of drawing fine distinctions as to whether the particular crime charged had been proved, and the prosecution of charging in advance, at its peril, an offense which the evidence, because of such fine distinctions, might show not to exist although the guilt of the defendant be manifest. (*People* v. *Myers, supra.*)"

Not only was the information in this case entirely sufficient but it fully appears from the evidence that throughout the trial and long before, the appellant was fully apprised of the exact nature of the offense with which he was charged, and no possible claim of prejudice in such a respect can be maintained.

It is contended that the evidence is not sufficient to justify the verdict in two respects; first, that there was no evidence that the appellant ever received the money referred to in the information and, second, that the evidence shows, without conflict, that the Fresno Mutual Savings Association was a partnership of which the appellant was a member and that,

therefore, he could not be guilty of embezzlement. While we do not view the evidence as establishing the fact that this society or association was a partnership, we think this point has been sufficiently disposed of by what has been heretofore said. ■ We will, therefore, turn to the first specification as to the insufficiency of the evidence. The following facts appear: The appellant was treasurer of the society named in the information and for a number of years had in his possession the books and accounts of the organization. One J. Mori borrowed $300 from the society, giving his note to cover the same, dated November 24, 1923, payable to the Fresno Mutual Savings Association. A number of payments of interest were made at various times and receipted for by the appellant. Some months before May 15, 1930, the exact time not being disclosed, the appellant called on Mori at Los Angeles with reference to the payment of the loan and at that time suggested that a new note be made out payable to the appellant personally. It does not appear whether such a new note was given or not. In any event, on May 15, 1930, Mori mailed to the appellant at Fresno, his personal check for $300.25, payable to the appellant, on a bank at Downey, California, and intended by him to cover the balance due on the note. This check was afterward returned to him as paid by his bank, was charged against his account in the bank, and the banker testified that it went through the bank in regular course and was paid. The check was introduced in evidence and bore the indorsement of the appellant and underneath that, the indorsement of one Harry Hori, whose connection with the matter is not disclosed. The association in question had a bank account in a Fresno bank but neither this check nor the proceeds thereof was ever deposited in this account. This check was paid within a few days after May 15, 1930. In July, 1930, a meeting of the members of this association was held for the purpose of going into its affairs. The appellant was present and presented to the meeting a statement purporting to show the assets of the association, which included a statement of the account of Mori, showing that he was still indebted to the association in the sum of $655.56. At that time the appellant stated that this statement as to the assets of the association was correct, but during the meeting, when particularly asked by one of the persons present if Mori owed this

amount of $655.56, the appellant did not answer. At this meeting, one Muratani, who kept the books of the association at intervals by writing up records from slips and who had prepared the above statement of assets of the association from slips and from information furnished to him by the appellant, was present and explained the statement. This man Muratani testified that at some time during the last half of the year 1930 he asked the appellant if he had ever received anything from Mori, to which appellant replied that he had received $200. It thus fully appears that the appellant knew that members of the association were investigating its affairs and, in particular, that they were questioning the status of Mori's account in July, 1930, and also at some other time during the last half of that year. It further appears that the appellant went to Seattle in April, 1931, and that he registered in a hotel there under an assumed name. Shortly thereafter, an old acquaintance of his from Fresno saw him at this hotel, whereupon the appellant asked this person not to disclose the fact that he had seen him in Seattle. A day or two later the appellant was arrested upon this charge at the request of Fresno authorities. Shortly thereafter, he stated to this old acquaintance that he wanted to get out of jail and settle this matter when he got back to Fresno. He was ordered released and promptly proceeded to Japan, being later extradited and brought back to Fresno for trial. Some evidence was introduced of other sums received by the appellant as treasurer of this association, which were not deposited in the association's account in the bank or credited to the accounts of the persons paying the same. In his opening brief appellant made the statement that a certain witness testified that the indorsement of the appellant's name on the back of the check was in the appellant's handwriting. ▮ In a later memorandum filed, the appellant sets forth that this statement was not correct and that the record contains ''no other authentication of this endorsement''. It is true that this witness testified that he believed this indorsement was in the appellant's handwriting and that this statement was, upon motion, stricken out. However, the check itself was admitted in evidence, as were also certain receipts which were proven to have been signed by the appellant. Sufficient evidence was before the jury to support the implied finding

that this check was indorsed by the appellant. Some contention is made that the jury should have drawn the inference from the fact that the check was also indorsed by one Hori, that Hori and not the appellant, received the money. A contrary inference is also possible as it is common experience that a man who indorses a check and parts with the possession thereof, usually obtains either the money or an equivalent credit or value. While we have only briefly summarized the evidence on this particular point, in our opinion, it is sufficient to sustain the conclusion implied by the verdict of the jury, that the appellant received the money which was unquestionably paid by Mori to discharge his debt to the association.

It is next contended that five instructions given by the court to the jury were erroneous. ■ As to three of these it is not claimed that they did not correctly state the law, it being only contended that they had no relation to the facts in this case. This contention is based entirely upon the proposition that the offense covered by section 504 of the Penal Code was not involved in this case, since the information was drawn under section 484 of this code. For the reasons heretofore given the objections to these instructions are without merit. ■ Another one of the instructions complained of covered the definition of a partnership. So far as it might have application to this case, the instruction as given was correct. However, we think that under the evidence and the law, no instruction on this subject should have been given. In any event, the instruction was more favorable to the appellant than he was entitled to and could not have been prejudicial to him. ■ The other instruction complained of had to do with the consideration by the jury of any evidence as to the flight of the appellant. The only objection made is that the instruction should not have been given for the reason that there was no evidence produced as to any such flight. The evidence upon this subject has been summarized by us heretofore in this opinion, and was sufficient to justify the trial court in instructing the jury as to the law upon that subject.

The argument is advanced that certain instructions given by the court were disregarded by the jury. While, under our view of the law as to the main point raised upon this appeal, namely, as to whether the information was sufficient, we

think that portions of these instructions should not have been given, the giving of these instructions was much more favorable to the appellant than he was entitled to and they were very far from prejudicial to him. The jury was fully and fairly instructed upon the issues raised by the information and the appellant's plea thereto.

While a large number of points are raised by the appellant, both directly and incidentally, nearly all of these are based upon the contention that the information did not charge an offense and that there was a variance between the proof and the allegations of the information. We think the law as to pleading such an offense as is here involved, is thoroughly established, and that this case well illustrates both the sort of situation which these various amendments to the Penal Code were designed to prevent and the wisdom of the procedural changes thus made.

The judgment and order appealed from are affirmed.

Marks, J., and Jennings, J., concurrred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 13, 1932, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 28, 1932.