[Crim. No. 6402.   Second Dist., Div. One.   July 8, 1959.]

THE PEOPLE, Respondent, v. JERILYNN COE,
Appellant.

Miller & Maddox, Loren Miller, and Edward Carter Maddox for Appellant.

Stanley Mosk, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

LILLIE, J.—Defendant was accused by way of information with grand theft, taking $1,610.26, the personal property of Karl Holton, Probation Officer, in violation of section 487, subdivision 1, Penal Code. She waived her right to a trial by jury and submitted the matter to the trial court on the transcript of the proceedings had at the preliminary hearing. Upon her conviction, she was granted probation on the condition she spend the first six months of her term in the county jail. This appeal is from the judgment and order denying defendant's motion for a new trial.

An examination of the evidence in a light most favorable to the respondent discloses that defendant worked as a cashier at the payment window of the Los Angeles County Probation Department, receiving cash payments from private persons ordered by the Domestic Relations Department of the Superior Court for child support. These funds were accepted by her in the name of Karl Holton the Probation Officer who is designated as the court trustee. Her general duties consisted of taking the proffered payments, writing receipts, and turning the money over to the central cashier, which funds were transmitted to the county auditor who issued warrants to the private parties entitled to them. For the money she received, defendant issued receipts in triplicate in the following form:

"County of Los Angeles   Office of the Court Trustee
Received from . . . . . .
For Account of . . . . .

Karl Holton, Trustee
by . . . . . . . . . . . . . .,"

giving one copy to the payor, retaining one for office records and transmitting one with the funds to the auditor. The money was kept in a cash drawer which could be locked with a key which defendant kept. At 2 p.m. each day she gave all of the even $100 amounts she had collected to the central cashier, and the excess (less than $100) she kept in her possession until 4 p.m. when she rendered a final account for the day and turned over the proceeds and receipts to the balancing cashier who gave her an I.O.U. Defendant had a metal box with a separate lock and key which, if she retained money overnight, she kept in a compartment in the safe. At the end of each business day defendant placed the cash box in the proper compartment in the safe where it remained until taken out by her. Four people had the safe's combination, including Mr. Ward and Mrs. Pickett, defendant's supervisor. Besides having a key to the cash box defendant had a key to the compartment in which the cash box was kept. No other person had both, although Mrs. Pickett had the only other key to the cash box and Mr. Ward the only other key to the compartment. When defendant put the cash box in the safe at night no one checked the contents.

The shortage was uncovered by a routine audit on October 29, 1957, by account auditors. On that day defendant was absent. When she failed to appear, they opened her cash box and counted the money. Among the currency and receipts were 50 receipts sealed in a separate envelope not covered by sufficient money to balance. A computation showed a shortage of $1,610.26 between the total money and receipts. The 50 receipts were dated October 22 and 23, running through the 25, 28, 29, and 30th. Defendant's last day of work was Monday, the 28th, yet she signed receipts dated the 29th, and 15 dated the 30th. Although receipts could be written after 4 p.m. for the next day, it was not customary to write them for two days later.

Appellant was unable to explain the shortage. She testified that when she last locked the cash box in the safe on October 28 all of the money was in it, some $1,700 or $1,800; and that the post-dated receipts covered checks. She said she delayed her accounting because she did not have time to make a balance on October 22; did not work on the 23rd or 24th, was ill at home after 2 p.m. on the 25th; and on Monday, the 28th, did not turn in the money and receipts accumulated on those days because the balancing clerk had gone home, so she locked them

in the cash box in the safe. She did not work on the 29th because of illness in her family and on Tuesday, November 6, she was arrested. She denied any knowledge of the sealed envelope in which the receipts evidencing missing funds were found, or that she took or removed any funds.

Appellant contends that it was error to admit proof of a violation of section 504, Penal Code, under an information charging grand theft in violation of section 487, subdivision 1; there is a fatal variance between the crime charged and the proof; and the evidence is insufficient to support a conviction of grand theft.

The information alleging a violation of section 487, subdivision 1, Penal Code, briefly charged that on October 28, 1957, defendant "did wilfully, unlawfully and feloniously take" $1,610.26, "the personal property of Karl Holton, Probation Officer."

Section 504 provides that "every officer . . . of any county . . . and every deputy, clerk, or servant of any such officer, and every officer, director, trustee, clerk, servant, or agent of any association, society or corporation (public or private) appropriates to any use or purpose not in the due and lawful execution of his trust, any property which he has in his possession, or under his control by virtue of his trust, or secretes it with a fraudulent intent to appropriate it to such use or purpose, is guilty of embezzlement."

In advancing her position that in the case of a county employee accused of embezzling public funds, proof of a violation of section 504, Penal Code, may not be made under an information charging a violation of section 487, subdivision 1, appellant argues she should have been charged under section 504. This contention, of course, is predicated on the supposition that the monies appropriated by her were public funds, an assumption not justified on the record before us or under the law. The funds in question were deposited with Karl Holton, Probation Officer, who was designated the court trustee. Pursuant to court order they were paid by private parties directed by the Domestic Relations Court in divorce and other proceedings to pay for the support of their minor children, for transmittal to the private persons for whose benefit the funds were ordered. Defendant, a county employee, and an agent of the court trustee, received the funds at the cashier's window. She gave receipts therefor, indicating for whose account the money was received by her, in the name of Karl Holton, court trustee. Later each day she turned the monies

over to the central cashier, which were transmitted by him to the county auditor, who issued warrants to those entitled to them and on whose accounts the money was credited.

The evidence rules out any serious contention that the monies were of a "public fund" nature, to be used or held for a public purpose; but is entirely compatible with the private use or purpose for which their payment was ordered and received, to wit, child support. It is well known that this method of enforcing support orders is employed by our courts to avoid argument between private parties who are already estranged to such a point as to require litigation. The time during which this money is held by the trustee, the facility through which the money is paid, is no longer than is necessary for the machinery of transmittal to operate. None of the money was paid by way of a fine or through a probation order to become county or state revenue. We fail to see how appellant could seriously argue that the money appropriated by her under the circumstances at bar constituted "public funds."

Although it is obvious from a careful reading of section 504, the cases construed thereunder, and various punitive provisions relative thereto, that the Legislature intended the embezzlement or defalcation of public funds by a public officer to be included in that section, the term "public" in connection with the property subject to appropriation is not used.

That a prosecution under section 504 could not be limited exclusively to embezzlement of "public" monies is borne out by the absence of any direct reference thereto, and the inclusion therein of the appropriation by private persons of *any property* belonging to any association, society or corporation of either a public or private nature.

It seems clear therefore not only from a factual consideration of the record before us but from a reasonable interpretation of section 504 that public funds were in no way involved in the instant prosecution and the defendant was not charged either directly or indirectly with appropriation thereof. It was the theory of the pleader in the trial of the case, and the proof so showed, although the evidence admits certain elements of a crime under section 504 in that defendant was a county employee and agent of the court trustee and that she embezzled trust funds she had taken on behalf of her principal, that there was clearly a violation of section 487, subdivision 1.

However, even were the monies of a public nature, we find no merit to appellant's contention that there is such a "qualitative difference" between grand theft under section 487, subdivision 1, and one of the offenses defined in section 504 (embezzlement of public funds by a public employee), as to preclude a conviction under section 487, subdivision 1, where appellant was charged by way of information with the one crime and tried upon the theory that she committed another. It is answered by the holding in *People* v. *Murakami*, 122 Cal.App. 221 [9 P.2d 583]. There, defendant was charged with grand theft under section 484 in that he "unlawfully took the property of the Fresno Mutual Savings Association, a voluntary association, consisting of the sum of $300.25. . . ." The offense consisted of taking money that he as treasurer of the organization had collected from one of the members of the association to whom a loan had been previously made. It was argued that the information charged grand theft under section 484 while the case was tried upon the theory that a crime had been committed under section 504, and that the information should have been drawn with particular reference to the latter section. After tracing the legislative history of section 484, defining theft, the court found that it included the offense which was more particularly described in section 504; and citing *People* v. *Fewkes*, 214 Cal. 142 [4 P.2d 538], held that the information need not state the kind of grand theft with which the defendant is charged (*People* v. *Manchell*, 91 Cal.App. 788 [267 P. 718]), on the theory that under the new procedure it is unnecessary and improper to compel the district attorney in advance of the proof to elect upon what theory the prosecution is to proceed, whether it be larceny, embezzlement, etc. The court relied upon *People* v. *Myers*, 206 Cal. 480 [275 P. 219], holding that distinctions in the charge and proof were purposely eliminated to simplify pleading procedure and to relieve the courts from the necessity of drawing fine distinctions to determine whether the particular crime charged had been proved.

Section 484, Penal Code, defining theft, includes larceny, embezzlement, false pretenses and kindred offenses. Theft is divided into degrees, grand and petit (Pen. Code, § 486), and section 487 defines grand theft. The word "embezzlement" is to be read as if the word "theft" were substituted therefor (§ 490a) and section 503 defines embezzlement as the fraudulent appropriation of property by a person to whom it is

entrusted. ■ Construing all of these sections together, it is clear that grand theft under section 487, subdivision 1, is included in theft as defined in section 484, which in turn includes the crimes described in section 504, which are species of theft (*People* v. *Murakami,* 122 Cal.App. 221 [9 P.2d 583]).

■ The "qualitative difference" relied upon by appellant consists of greater punishment, disabilities relating to franchise and eligibility for public office and availability of probation. It appears to us that had the Legislature intended the wrongful appropriation of public funds under section 504 to be dealt with separately and differently from monies of a public or private association or corporation also included therein, it would not have classed the two kinds of theft in the same section; and in accordance with the Murakami case, *supra,* which held that the offenses defined in section 504 are included in the crime of theft, it follows that the embezzlement of public funds is also included. We note, too, that the so-called "qualitative distinction" pointed out by appellant does not relate to the substantive offense, the essentials common to both embezzlement and theft being the unlawful taking of funds or property belonging to another. The sections relating to punishment, disability and probation relate exclusively to matters material only *after* conviction of a person who by virtue of his official capacity and the nature of the funds taken is treated somewhat differently. We believe this in no way alters the liberal rule laid down in the Murakami case, *supra,* and we cannot permit the so-called "distinction" which does not relate to the substantive offense to rule out the existence of a crime when the guilt of the defendant is manifest.

■ In addition, it appears from the record before us that appellant at all times was fully apprised of the exact nature of the offense with which she was charged, and no claim of prejudice has been or can be sustained in that connection. Knowing the content of the information filed against her, and of the testimony taken at the preliminary hearing, she voluntarily stipulated the latter could constitute the plaintiff's case at the trial, upon which she relied to present her defense. Appellant has failed to show how or in what way she has suffered prejudice and we find none to her resulting from the court's alleged error.

Closely related to the issue raised by appellant that she should have been charged with embezzlement of public funds, are the remaining claims that there was a fatal variance be-

tween the information and proof, and the evidence is insufficient to support the conviction of grand theft.

As already pointed out herein, the evidence before us supports no charge of material variance, for the taking of personal property as alleged in the information was exactly what was proved at the trial in accordance with the theory of the pleader that the funds were not of a public nature. This is borne out factually and under well-established rules of entrustment. Of course, the question of variance arises only if we assume there was proof of the taking of public funds under section 504. We hold that the evidence negates such a supposition, but assuming only for the purpose of appellant's contention that the monies were of a public nature and proof thereof constituted a variance, we fail to find it to be material, or such as to render the judgment subject to reversal. Appellant has not established that she was in any way misled in making her defense or that any substantial rights were in any manner adversely affected by the variance between the proof and the charge. She even now makes no claim that she did not know the offense with which she was charged or the testimony presented against her by the People. Nor does the record show that she objected at the time of trial to the alleged variance or requested any continuance for the purpose of otherwise preparing her defense (*People* v. *Cook,* 136 Cal.App.2d 442 [288 P.2d 602]). We agree that the purpose of an information is to notify the accused of the charge he is to meet at the trial (Pen. Code, § 952; *People* v. *Massey,* 151 Cal.App.2d 623 [312 P.2d 365]), however, the record shows that appellant knew in advance of the accusation she must meet. She argues that she may be placed in double jeopardy by being again charged with the same offense, and that a prosecution under this information will not bar a future prosecution under section 504. Even assuming that the monies she appropriated were of a public nature, it occurs to us that if, for any of the acts found in the record at bar, she is ever charged with embezzlement of public funds under section 504 she will be entitled to a plea of double jeopardy (*People* v. *Bechtel,* 41 Cal.2d 441 [260 P.2d 31]), and may show former jeopardy by the evidence produced in this case. Extrinsic evidence is admissible on the trial to identify the offense under which defendant has already been convicted. (*People* v. *Braddock,* 41 Cal.2d 794 [264 P.2d 521]; *People* v. *Williams,* 27 Cal.2d 220 [163 P.2d 692].)

Relative to appellant's remaining contention that

the evidence is insufficient to support the conviction of grand theft, our attention has been drawn to the cases of *People* v. *Borchers,* 199 Cal. 52 [247 P. 1084], and *People* v. *Hewlett,* 108 Cal.App.2d 358 [239 P.2d 150], cited for the proposition that there must be an intent on the part of the accused to deprive the owner of his property. Appellant claims that the money appropriated by her did not actually belong to Karl Holton.

Any contention under the evidence that appellant was not acting as an agent of and for and on behalf of the court trustee, in receiving and holding the support monies, is not well made. As to her claim that the People must prove the money actually belonged to Karl Holton, we hold that under the facts in this case it is not necessary for the prosecution to establish money title in the trustee. Any argument concerning who actually owned the money is immaterial since it cannot be intelligently disputed on the evidence that during the time the shortage occurred the defendant had the monies in her possession, or under her control, by virtue of the trust agreement her principal had with the courts wherein he was designated as court trustee. *People* v. *Hewlett,* 108 Cal.App.2d 358 [239 P.2d 150], simply sets out the elements of embezzlement and did not discuss at any length the issue of the ownership in the property by the principal. In *People* v. *Borchers,* 199 Cal. 52 [247 P. 1084], there is language indicating that under a charge of embezzlement it must be shown that the property taken belonged to the alleged principal. The facts therein were quite different from those at bar. In addition the case was decided on other grounds. In *People* v. *Applegate,* 91 Cal.App.2d 163 [204 P.2d 689], in which defendant was charged with grand theft under section 484 with having taken the personal property of the United Flower Growers' Association, a corporation, consisting of $9,800, the question of ownership of the money was raised. The court concluded that defendant held it as a trustee, and held that any legally recognizable interest is sufficient to sustain an averment of ownership in and prosecution for embezzlement of property held by a trustee. The Applegate case relied on *People* v. *Torp,* 40 Cal.App.2d 187 [104 P.2d 542], in which certain funds were delivered by Austin to defendant to pay to Gaines for the purchase of certain property. Defendant delivered the deed to Austin and appropriated the money. The information did not allege to whom the money belonged, and appellant contended it was necessary for the prosecution to establish

legal title to the money. The court held that the evidence showed an entrustment, and that title to the money need not be absolute, for any legally recognizable interest is sufficient. It was held that to establish legal title thereto was not necessary and that it was sufficient if the money was given to defendant by Austin as a trust fund for a specific purpose. Said the court at page 193: "Whether the legal title to the money was in the Austins, the Gaines, or Mrs. Costa, is immaterial in this criminal proceeding. As far as the defendant is concerned he had no legal title to the money and his possession was for a limited purpose only. He cannot, in defense of his act, raise the question of titles as between others."

In the trial defendant did not attempt to show, nor does she claim before this court that ownership of the money was elsewhere than in the court trustee, or that she did not act as the agent of the trustee in receiving the funds. We deem it not material since the fact of entrustment with the probation officer is clear.

For the foregoing reasons the judgment and the order denying motion for a new trial are, and each is, affirmed.

White, P. J., and Fourt, J., concurred.