[Crim. No. 13036. Second Dist., Div. Four. Feb. 29, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. CHARLES JESSE COX, Defendant and Appellant.

Ramsey & Emlein and Milton Emlein for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Marvin A. Bauer, Deputy Attorney General, for Plaintiff and Respondent.

KINGSLEY, J.—Defendant was charged in one count with a violation of Penal Code, section 286, and in one count with a violation of section 288a of the Penal Code. It was charged that defendant was more than 10 years older than the victim and that the victim was under 14 years of age. Defendant was charged with priors for burglary in the State of Missouri, forgery of a United States Treasury check, burglary in the State of California, and a violation of Penal Code, section 470 (forgery).

Defendant pled not guilty to the charges and also denied each prior. Thereafter defendant admitted three of the priors

and the other was stricken. Defendant personally, and with counsel, waived a trial by jury.

It was found that defendant was guilty, that he was more than 10 years older than the victim, and that force was used on the victim. A probation report was ordered; a doctor was appointed to examine defendant pursuant to Penal Code section 288.1; defendant was found not to be a mentally disordered sex offender; probation was denied, and defendant was sentenced to be imprisoned in a state prison for the term prescribed by law.

Defendant has appealed from the judgment. For reasons set forth below, we affirm the conviction.

The alleged victim was a boy named Charles, of the age of 12 years. He testified that, on Saturday, April 23, 1966, he visited the home of his friend Robert, a nephew of defendant. Defendant was at Robert's home. Defendant told Robert to go to the store for a carton of milk. When Charles tried to go with Robert, defendant held him by his wrist and prevented him from going. After Robert had left, defendant led Charles to the bathroom where defendant forcibly committed acts in violation of section 286 of the Penal Code and in violation of section 288a of the Penal Code. Afterward Robert came back and defendant told Charles: ''Don't you ever tell anybody about this or you will be in a lot of trouble.'' After Charles left the bathroom, he and Robert went horseback riding.

There was nothing in particular that made Charles remember the 23d of April and he didn't tell anybody about the occurrence for approximately a month later. But Charles' parents knew where he was every other day and Charles went horseback riding on the day of the alleged offenses and registered at the riding stables. The day of the occurrence was the first and last time Charles had ever been horseback riding in California.

Robert testified that he had run away from home on several occasions because his uncle was making ''advances'' to him. Robert had run away from home three times before defendant came to live with them. When Robert was lying in his bed defendant would come in and tell him he wanted ''some loving.'' Robert said that his uncle tried to put his ''appendix'' into his ''rear end.'' Robert remembered that he and Charles went horseback riding the day he went to the store for his uncle. Robert thought he went horseback riding one time after that day. Charles told Robert that it was the second time Robert's uncle tried to do that, and that Charles got

money from defendant. Charles said defendant sometimes gave him a quarter. Robert said that Charles told him that Robert's uncle "made love" to Charles on two occasions and Charles received $3.50 from defendant.

Defendant testified that, on April 23, 1966, a Saturday, he took his mother to the beauty shop as was his custom almost every Saturday. Defendant met his sister for coffee, picked up his mother, the three went to his sister's house and then defendant, his mother, and the sister's child, for whom defendant was baby sitting, went to the Bixby Knolls shopping center. Defendant said he did not see Charles at all on April 23d. Defendant's mother corroborated defendant's alibi fully as to the events of April 23, 1966, and she also said Charles was not in her home on April 23d. Defendant's sister corroborated defendant's alibi as to her contact with defendant on April 23, 1966. Miss Croutcher, a beautician, testified that defendant's mother had an appointment with her on April 23, 1966; Miss Croutcher saw defendant at the beauty shop at 20 minutes to 12.

Mrs. Anderson, who did the bookkeeping for Bob's Riding Stables, checked her records and found that Charles rode a horse at 1 o'clock April 30th and Robert Cox rode a horse at 2 o'clock on April 30, 1966. One of Mrs. Anderson's three record sheets (the one for Charles and Robert) had the corner torn off and it was not dated. Mrs. Anderson put the date on the sheet the Friday before she was in court. Mrs. Anderson assumed, because the sheet with the boys' names was with two other sheets dated April 30th, that that sheet should also be dated April 30th. The wife of the owner of Bob's stables brought records of the names of people who rode horses on April 23d and neither Charles' nor Robert's name was on these records.

Charles said he wasnt sure of the date of the incident, and that it was either the third or fourth Saturday in April.[1]

Defendant's mother testified that, on April 30, 1966, she also had a beauty parlor appointment and defendant drove her there; while defendant and Bobby were waiting for her he and Bobby had breakfast; defendant picked her up around 10:15 or 10:30 and they all drove to her daughter-in-law's house where defendant remained all day. Carol, the daughter-in-law, verified this. Defendant testified to the same events on April 30th, and Arthur Dennison, a friend of defendant's

---

[1] *I.e.*, either April 23d or April 30th.

brother and sister-in-law, recalled seeing defendant at Carol's home on April 30, 1966, from 11 a.m. to 3:30 p.m.

Dale Wayne Elwell said he was "pretty sure" he rode a horse on May 7th at Bob's Riding Club; he identified his signature on page 2, the crucial page of the records. Janet Butts, whose name also appeared on the crucial page of Bob's Riding Club records, said she had been horseback riding there with three other people on May 7, 1966. On that day, Gary, who was with her, showed her a watch he had received for his birthday. Gary's birthday was on May 2d.

I

We examine first the proceedings after the finding of guilt and leading up to the ultimate pronouncement of judgment. Subdivision (c) of section 5501 of the Welfare and Institutions Code provides that, in cases such as this, where defendant is convicted of a sex offense against a victim under the age of 14 years, the institution of proceedings under the Mentally Disordered Sex Offender Act is mandatory. But that requirement is subject to the exception stated in section 5500.5. (*People* v. *Garn* (1966) 246 Cal.App.2d 482 [54 Cal. Rptr. 867].) That section provides (*inter alia*) that the act is not applicable to "any person ineligible for probation under the Penal Code." (*People* v. *Foster* (1967) 67 Cal.2d 604, 607-608 [63 Cal.Rptr. 288, 432 P.2d 976].) Defendant's three admitted prior felonies make him ineligible for probation under the fourth paragraph of section 1203 of the Penal Code except as the fifth paragraph of that section comes into play. The latter paragraph provided: "In unusual cases, otherwise subject to the preceding paragraph [*i.e.*, the fourth paragraph] in which the interests of justice would best be served thereby, the judge may, with the concurrence of the district attorney, grant probation."

As was pointed out in *People* v. *Foster, supra* (1967) 67 Cal.2d 604, this provision might make a defendant such as Cox eligible for proceedings under the act. But the provision is a special one, requiring affirmative action by both the trial judge and the district attorney. Unless and until that action is taken, the ineligibility continues. We conclude that, unless there is such affirmative action, the inapplicability of section 5501 also continues.[2] It follows that there was no error in not instituting proceedings under the Mentally Disordered Sex Offender Act.

[2]The record here discloses no such ambiguity as to the trial court's attitude as appeared in *People* v. *McGill* (1967) 257 Cal.App.2d 759 [65 Cal.Rptr. 482].

Section 288.1 of the Penal Code provides as follows: "Any person convicted of committing any lewd or lascivious act including any of the acts constituting other crimes provided for in Part 1 of this code upon or with the body, or any part or member thereof, of a child under the age of 14 years shall not have his sentence suspended until the court obtains a report from a reputable psychiatrist as to the mental condition of such person." This section was adopted in 1941. The subsequent enactment of what is now the Mentally Disordered Sex Offender Act has rendered the first clause of section 288.1 largely inapplicable, since, if the defendant is eligible for probation, proceedings under the latter act will, themselves, give to the court the same information as that provided for under the earlier enactment. But, as the case at bench indicates, the section still affords a useful tool to a trial court faced, as here, with the problem of whether or not to invoke the special exception above quoted in Penal Code, section 1203. Of course, the court may decide, purely on the basis of the evidence at the trial and a normal probation report, that it does not want to invoke that provision. But if the trial court is of the preliminary opinion that it might decide to invoke the exception, an order for a psychiatric report under Penal Code, section 288.1 will give both the court and the district attorney valuable additional information to be used in forming the judgment that the defendant then before the court is or is not an "unusual" case in which "the interests of justice" would be served by a grant of probation. If the report, when received, does not cause the court and the district attorney to invoke the exception, then, as in the case at bench, sentencing proceeds; if, on the basis of all then available data, the exception is invoked, proceedings under the Mentally Disordered Sex Offender Act must be begun.

## II

It is apparent that the prosecution changed its theory twice during the course of the trial. Throughout the entire record is the assumption, by all parties, that the crimes, if committed at all, had occurred on the date on which Charles went horseback riding. The information had charged that the offenses were committed "on or about the 23d day of April," and Charles' original story had fixed that date as the one on which the alleged acts had occurred. When Mrs. Anderson testified that, according to her evaluation of her undated records, the riding had been on April 30th, the prosecution accommodatingly shifted to that date. When later evidence

660

showed that the riding must have taken place on May 7th, the prosecution, still rolling with each successive punch, finally adopted the May date as the one on which to rely.

As above indicated, defendant had offered alibi testimony as to both April dates, he offered none as to May 7th and he did not seek a continuance when the third date came into the picture. It is here argued that this double switch in the date relied on worked to the prejudice of defendant in such a manner as to require a reversal. We do not agree.

■ The precise time of a crime need not be declared in the accusatory pleading; it is sufficient if it alleges the commission of the offense at any time before the filing of the information, unless the time "is a material ingredient of the offense." (Pen. Code, § 955.) ■ There is no fatal variance between the information and proof, where the defendant is not misled in presenting his defense, because he does not present a defense including alibi testimony. (*People* v. *Barreras* (1960) 181 Cal.App.2d 609, 614 [5 Cal.Rptr. 454].) Where defendant is not misled because he knows from testimony at the preliminary hearing the correct date of the offense, there is no fatal variance (*People* v. *Smith* (1958) 50 Cal.2d 149 [323 P.2d 435]), and it has been held that a defendant was not prejudiced by a variance where he offered no alibi testimony as a defense. (*People* v. *Krupnick* (1958) 165 Cal.App.2d 755, 764 [332 P.2d 720].) ■ The reasonable conclusion of all these rulings is that the defendant in the case before us was prejudiced by the variance between the first alleged dates of the crime (April 23d and 30th) and the prosecution's proof as to another date (May 7th) since defendant presented alibis for the first and second dates of the alleged offense, but not for the third date finally alleged by the prosecution.

The People argue that, since defendant made a general denial as to the commission of the crime, the date of the alleged offense was of no significance, citing *People* v. *Horner* (1955) 137 Cal.App.2d 615 [290 P.2d 902]. In the *Horner* case, no alibi was involved, and therefore we believe that the language in that case relied on by the People is not relevant to the situation before us where defendant relies on an alibi.

■ However, it is proper procedure for defense counsel where he is surprised by a variance to seek a continuance. (See *People* v. *Coe* (1959) 171 Cal.App.2d 786, 794 [342 P.2d 43], and *People* v. *Krupnick, supra* (1958) 165 Cal.App.2d 755, 764.) It was said in *People* v. *Cook* (1955) 136 Cal.App. 2d 442, 447 [288 P.2d 602], that if defendant considers such

variance important it was his duty to subpoena witnesses with knowledge of his whereabouts on the new date and if necessary to ask for a recess of the trial to prepare his defense against the new day. (See also, *People* v. *Brown* (1960) 186 Cal.App.2d Supp. 889, 894 [9 Cal.Rptr. 53].) Therefore, although defendant in the case at bench was harmed by the variance, he did not ask for a continuance as he was required to do, and cannot complain now on appeal when he could have corrected the problem in the court below.

### III

 Defendant alleges that he was denied proper defense by counsel. Defendant, on appeal, states that his counsel failed to ask for a recess, failed to ask questions on cross-examination, and failed to ''pursue his objections and to make a record.'' To justify relief it must appear that counsel's lack of diligence or competence reduced the trial to a farce or a sham (*People* v. *Ibarra* (1963) 60 Cal.2d 460, 464 [34 Cal. Rptr. 863, 386 P.2d 487]), and defendant has not made such a showing.

It is true, as we have pointed out above, that trial counsel did not seek a continuance when the third alleged date entered the picture. But, on this record, we cannot say that that omission evidences any dereliction of duty. Counsel had been alert to offer alibi evidence when the second date appeared; we must presume that, had he known of any available alibi testimony for May 7th, he would have been equally alert to seek an opportunity to present it.

 It is also true that there was no objection to the hearsay testimony by Robert to the effect that Charles had told Robert of other conduct between Charles and defendant. However, we cannot say that a tactical decision to play down this bit of purely cumulative testimony was wrong, much less that it rose to the level required by *Ibarra*.

### IV

 Defendant alleges that the trial judge erroneously induced defendant's trial counsel to withdraw an objection to testimony concerning the May 7th date. This contention is based on the following:

After Dale Wayne Elwell testified that he was, ''Pretty sure it was about the 7th of May that he went riding,'' appellant's counsel made the following motion:

''MR. HOLLAND: Your Honor, I will move to strike the testimony of this witness as not being material to the issues.

The date represented was the 30th of April, and he says it was in May.

"THE COURT: Are you sure you want the testimony stricken?

"MR. HOLLAND: Your Honor, it was—no, I withdraw the motion."

Defendant was not prejudiced by the judge's remark. The proper procedure for defense counsel in such circumstances is to make an objection to the testimony and move for a continuance. (See *People* v. *Krupnick, supra* (1958) 165 Cal.App.2d 755, 764, and *People* v. *Coe, supra* (1959) 171 Cal.App.2d 786, 794.) There is nothing in the judge's remark that should have deterred defendant from requesting a continuance at that time, and the remark did not deprive defendant of a fair trial.

**V**

 Defendant's final allegation is that the court erred in incarcerating defendant during the trial, since defendant could not interview witnesses while he was in jail.

Prior to the incarceration, the deputy district attorney had informed the court that defendant chased Charles or had given the boy some cause to be alarmed on at least two occasions. It is well established law that at the beginning of the trial and during the trial the court may order the defendant into custody. (Pen. Code, § 1129.) In *People* v. *Oringer* (1961) 193 Cal.App.2d 19, 28 [14 Cal.Rptr. 95], it was held not an abuse of discretion to revoke bail and remand the defendant into custody, where there were attempts to tamper with witnesses by the defendant. Defendant in the case before us was not harmed by his incarceration. His behavior gave the court good cause to remand him into custody. Furthermore, his attorney was free to interview witnesses on his behalf during the period of his incarceration.

The judgment is affirmed.

Files, P. J., and Jefferson, J., concurred.