[Crim. No. 5381. Second Dist., Div. Three. Dec. 8, 1955.]

THE PEOPLE, Respondent, v. PAUL GEORGE HORNER et al., Appellants.

*Assigned by Chairman of Judicial Council.

Paul K. Duffy, Alexander H. Schullman and Abe Mutchnik for Appellants.

Edmund G. Brown, Attorney General, and Norman H. Sokolow, Deputy Attorney General, for Respondent.

SHINN, P. J.—Paul George Horner, Harry Jackson Legge, Betty Butler and Jean Lewis were charged with the offense of pandering (Pen. Code, § 266i) for procuring for Bonnie, a female, a place as an inmate in a house of prostitution and, separately, of conspiring to commit the crime of pandering by procuring for said Bonnie a place as an inmate of a house of prostitution. Horner was separately charged with rape of said Bonnie, a female, 16 years of age; the defendants waived trial by jury and the case was submitted on testimony taken at the preliminary hearing and additional evidence taken at the trial. Defendants were found guilty as charged. Horner was sentenced to state prison upon the conviction of

618

pandering and conspiracy to commit pandering, the sentences to run concurrently, and upon a conviction of rape, to the county jail, the sentence to run concurrently with the other two sentences. Horner and Betty Butler made motions for new trial which were denied. They appeal from the judgments and the orders.

Pursuant to leave granted at the time of the argument when Horner's attorney failed to appear, new counsel was engaged and a supplemental brief has been filed by Mr. Duffy.

We will consider first the appeal of Horner and the conviction of rape. Bonnie's age was established by competent evidence at 16 years. She testified that she had been employed by appellant and had had sexual intercourse with him six or seven times during the preceding two years. Phillip Barnes, Los Angeles city police officer, testified to a conversation had with Horner at the police station in which Horner stated that Bonnie had worked for him, he loaned her $5.00; that she allowed him to have intercourse with her as a courtesy for the loan of the money; thereafter there were three or four similar occasions. Horner testified that Bonnie had worked for him and that he had known her for about a year and one-half. He denied having had intercourse with her.

█ It is contended that the information charged the commission of the offense on or about July 7, 1954 and that there was no evidence that the act took place on or about that date or on any other specific date. The prosecutrix testified that she probably saw appellant on or about July 7, 1954; she had intercourse with him six or seven times over a period of two years and one of the times may have been on July 7. Appellant admitted having been with her on that date. His defense was that he had never had intercourse with her. In view of his denial, the date July 7, or any other specific date, was of no significance. █ "Under the generally accepted rule in criminal law a variance is not regarded as material unless it is of such a substantive character as to mislead the accused in preparing his defense, or is likely to place him in second jeopardy for the same offense." (*People* v. *Williams*, 27 Cal. 2d 220, 226 [163 P.2d 692].) █ In addition to the testimony of the prosecutrix and the testimony as to Horner's admissions to Officer Barnes, there was evidence of the close relationship between Bonnie and appellant, to be hereinafter related, which rendered it highly improbable that there was any truth in appellant's denials. From the entire

evidence the trial court was fully justified in finding that the offense was committeed on or about July 7, 1954.

The following is a summary of the evidence addressed to the charges of pandering and conspiracy to commit pandering. Bonnie testified that she asked Horner to help her and Legge, her paramour, raise money in order that they might get married. Horner called a person he addressed as "Jean" and asked her to call some of her friends in an effort to help Bonnie and Legge. Later, after a second telephone call, Horner told Bonnie that Jean Lewis had suggested that she might go out to "Betty's" to work and make some money. The "Betty" was defendant Betty Butler. The matter discussed was that Bonnie would work as a prostitute and receive $10 or more per customer. Horner drove Bonnie to a drive-in restaurant where they waited until Betty Butler came. Bonnie was driven by Butler to the latter's home. Butler made a telephone call, a man came in, was introduced to Bonnie, Butler directed Bonnie where to take him; they went into a bedroom, had an act of sexual intercourse and the man paid Bonnie $20. Two other men came in, another woman in the house took one of the men to a bedroom and Bonnie took the other. She spent the night in the bedroom with the man and engaged in sexual intercourse; Butler gave her $15. The following morning Bonnie told Horner of these occurrences. She asked Horner to arrange with Jean for her to return to Butler's which Horner promised to do. Later Horner told her she could not return that night because all the girls who worked for Butler were there. The next day Bonnie asked Horner to arrange for her to return to Butler's. Horner called Jean who came to Horner's apartment with a woman known as "Connie." Horner told Bonnie that Connie would pick her up, which she did, and drove her to the Butler house where she engaged in intercourse with another man. Another witness, Bonita Holetz, an employee of Horner's, testified to having heard Jean make an arrangement with Betty for a little girl to go to work. Connie Armstrong testified to a statement made either by or in the presence of Horner to Bonnie that she should go to work at Betty's in prostitution. Police officers visited the Butler house, forced a door open and found Bonnie and another girl there; forcing open another door they found a man and a woman on a bed in compromising attire. The officers had extensive conversations with Butler in which she admitted two previous arrests by one of the officers and asked him not to arrest the girls. Another officer testified

she told him she was going to send Bonnie home, that it was no kind of a place for her. Horner testified that he knew that Bonnie had been in trouble, was on probation and was only 16 years old. He had introduced her to Harry Legge. Horner admitted on the stand there was a discussion with Legge and Bonnie as to Bonnie's working as a prostitute in the home of Betty Butler; there was a discussion about his calling Jean Lewis to contact Butler; shortly thereafter there was a conversation between himself, Jean, Legge and Bonnie concerning Bonnie's working for Butler; that Bonnie told him that she had earned $35 and asked him to arrange with Butler for her to work another night. Upon cross-examination Horner admitted that he had discussed with Jean Lewis something to the effect that the latter would ask Butler to provide work for Bonnie. He testified that he had never met Butler.

Officer Kalkiewicz of the juvenile division testified that he talked with Horner who admitted that Legge and Bonnie were present at his residence one evening when they discussed Bonnie's working as a prostitute; that he called Jean and when she and Connie came to his residence that evening they arranged that Bonnie should go to a drive-in where she would be picked up.

■ When first questioned by the People, Bonnie was a reluctant witness. She testified to the principal facts above related but omitted some of the important details of her conduct. It is claimed that on the second day of her testimony, after she had spent a night at juvenile hall, she testified more freely and in greater detail than on the previous day, having spoken with the deputy district attorney before resuming the stand. It is argued that she was in some manner discredited as a witness because there were inconsistencies in her testimony and there was more willingness to testify on the second day. We find no such inconsistencies or contradictions as would have justified the trial court in rejecting her testimony as unworthy of belief. Upon the contrary her reluctance to go into details is understandable and although there were some contradictions in minor particulars there were none with respect to the acts and statements of the defendants which, if proved, were sufficient to establish commission of the offenses charged. The trial court believed her testimony as to the material facts and since her testimony, if true, was sufficient to establish those facts it is futile to ask a reviewing court to rejudge her credibility and reweigh her testimony.

■ It is argued in Horner's supplemental brief that the

title of the act by which section 266i of the Penal Code was enacted was defective for noncompliance with the mandate of section 24 of article IV of the Constitution that "Every act shall embrace but one subject, which subject shall be expressed in its title." The title (Stats. 1953, ch. 32, p. 633) reads as set out in the margin.[1] The subject of the act, not only in the title, but in the body, is "crimes and the punishment thereof." That is a sufficient title. ■ "The Constitution does not demand that the title of an act be a catalogue or abstract of its provisions, but merely that it contain a reasonably intelligent reference to the subject of the legislation." (*Ikuta* v. *Ikuta,* 97 Cal.App.2d 787 [218 P.2d 854].)

## The Appeal of Betty Butler

On behalf of this defendant it is argued that as to each count 'there is no substantial evidence beyond a reasonable doubt" that Bonnie did commit an act of prostitution or that the house of this appellant was a house of prostitution. With respect to the sufficiency of the evidence to prove the offense of pandering, appellant argues, as we have related, that the testimony of Bonnie was unworthy of belief. It is insinuated that the witness was coached by the deputy district attorney before she resumed the stand on the second day. The testimony of the witness was to the contrary and the insinuation is unjustified. Her account of her conduct in the Butler home was uncontradicted.

■ It was a reasonable inference that Horner, through the intermediary Jean Lewis, prevailed upon defendant Butler to receive Bonnie into her house for the purpose of earning money which she needed. There was evidence that telephone calls were made and that thereafter Butler picked up Bonnie and took her to her home. Upon her visit to the house Bonnie received $20 from one man and $15 from Butler, who presumably had made a collection from another customer whom Bonnie entertained. Defendant Butler did not take the stand. There was ample evidence that the premises were used for the purposes of prostitution.

Appellant argues that the testimony concerning the telephone calls made through Jean Lewis and the conversations

---

[1] ''An act to codify certain acts, relating to crimes and the punishment thereof, by amending Section 182 of, by adding Chapter 12 to Title 13 of Part 1 of, by adding Article 4 to Chapter 3 of Title 1 of Part 4 of, by adding Article 5 to Chapter 3 of Title 1 of Part 4 of, and by adding Sections 217.1, 266h, 266i, 310, 337h, 487b, 487c, 487d, 597k, 643, 643a, 643b, 646, 649, 649a, and 650a to, the Penal Code, and by repealing certain statutes specified herein.''

622

respecting the scheme between Bonnie and the other defendants were hearsay and inadmissible against her, for the reason that no evidence had been introduced of the existence of a conspiracy at the time the conversations were had and statements made. The testimony as to the initial request by telephone to Lewis that Bonnie be permitted to go to work as a prostitute in the home of Butler, followed by Butler's transporting Bonnie to her home for that purpose, established prima facie a conspiracy between Horner, Lewis and Butler to place Bonnie in a house of prostitution. Additional evidence of the acts and statements of these parties made thereafter during the life of the conspiracy was admissible against all the conspirators (*People* v. *Griffin*, 98 Cal.App.2d 1-44 [219 P.2d 519]; 11 Cal.Jur.2d 258). The contention that the evidence as to the acts and conversations of Horner and Lewis outside the presence of Butler was hearsay and inadmissible against her is untenable.

 It is contended further that the testimony of the police officers respecting conditions found in the Butler home when the officers forced the door of the house and later the bedroom door was inadmissible under the doctrine of *People* v. *Cahan*, 44 Cal.2d 434 [282 P.2d 905]. No objection was made to this testimony, but in disposing of the point reliance need not be placed on this omission. Without the testimony of the officers there was convincing and uncontradicted evidence that the Butler home was a house of prostitution. If there was error it was harmless.

The evidence to which we have alluded was sufficient to establish defendant Butler's guilt not only of the offense of procuring for Bonnie a place as an inmate of a house of prostitution but also of conspiracy with the other defendants to commit the offense of pandering. Defendants were accorded a fair trial; there was convincing evidence of their guilt and no reason appears for disturbing the judgments or orders.

The judgments and orders denying motions for new trial are affirmed.

Wood (Parker), J., and Nourse (Paul), J. pro tem.,* concurred.

Petitions for a rehearing were denied December 23, 1955, and the petitions of appellants Paul George Horner and Betty Butler for a hearing by the Supreme Court were denied January 5, 1956.

---

*Assigned by Chairman of Judicial Council.